## Richmond

### ARLINGTON COUNTY BOARD, ET AL.

### V.

### ALBERT GINSBERG

Record No. 820750.

January 18, 1985.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Thomas, JJ., and Harrison, Retired Justice.

*William B. Moore (Charles G. Flinn, County Attorney; Ken-drick, Gearheart, Aylor & Lockowandt,* on briefs), for appellants.

*Haynie S. Trotter (Thomas F. Farrell, II; Boothe, Prichard & Dudley,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the question is whether the trial court erred in ordering that the real estate tax assessment effective January 1, 1980, of an office building be reduced to the amount of the assessment for the preceding year.

Albert Ginsberg (the Taxpayer) filed an application in the trial court against Arlington County Board, James R. Vinson, Director of the Department of Real Estate Assessments, and Bennie L. Fletcher, Jr., Treasurer of Arlington County (collectively, the County), for relief from erroneous assessment under the provisions of Code § 58-1145, now § 58.1-3984 (Repl. Vol. 1984). The Taxpayer alleged that the property, known as the "Van Buren Building," was assessed, effective January 1, 1979, at $11,351,600, that he purchased it for $10,000,000 in an "arms length, negotiated sale" in November, 1979, and that it was assessed effective January 1, 1980, at $15,499,900, a valuation of $5,499,900 in excess of fair market value as established by the sale. He sought a reduction in assessment to the amount of the sale price and refund of excess taxes paid, with interest.

Certain facts are undisputed. The Van Buren Building is a 12-story office building constructed in 1970 in the Crystal City area. The building contains approximately 275,000 square feet of rented space, of which about 80% was rented in 1970 to the General Services Administration (GSA) under a 20-year lease. Subsequently, the additional space had been rented in large part to GSA at a higher rental rate under leases also expiring in 1990. The small balance of additional space, about 6,700 square feet, had been leased to private tenants at even higher rental rates. The GSA leases contained escalation clauses providing for adjustments in rental at the end of the 10th and 15th years to reflect increases in operating costs.

Ginsberg contracted to purchase the building on November 17, 1979, and closed the purchase for $10,000,000 on December 19, 1979. The sale was a bona fide, "arms-length" transaction. The trial court found that there was "no business relationship between the buyer and seller and they had never done business before." Ginsberg assumed an outstanding deed of trust obligation bearing

7½% interest and paid $3,500,000 in cash. As of January 1, 1980, the real estate assessment was increased from $11,351,600 to $15,499,900.

At the hearing in the trial court, Ginsberg testified that in his opinion the fair market value of the property was $10,000,000. He experienced a negative cash flow of $160,000 in 1980. Ginsberg testified that he expected to receive 6% to 8% return on his investment and considerably more than that after expiration of the existing leases. He estimated, however, that it would require the expenditure of approximately $4,500,000, $15 per square foot for the gross area of 300,000 square feet, to renovate the building to make it attractive to "commercially acceptable tenants."

N. McKenzie Downs, a real estate appraiser, testified as an expert witness for the Taxpayer. Downs testified that the building was in poor condition, caused by hard usage under the GSA leases, when compared with nearby buildings bringing higher rentals. In Downs's opinion, the fair market value of the property on January 1, 1980, was $10,000,000 to $11,000,000. Downs considered both contract and economic income and expenses in using the capitalization-of-income method of appraisal. Using the contract income approach, capitalized at 10½%, Downs valued the property at $6,000,000. In his opinion, the leasehold interest had no value to the Taxpayer. Using the economic income approach, Downs testified that the fee simple interest, exclusive of encumbrances, was $14,628,371. In his opinion, however, it would cost the Taxpayer at least $4,500,000 to realize the economic rent. Therefore, under this approach, the fair market value of the property was slightly in excess of $10,000,000.

Two witnesses, County Assessor James R. Vinson, and John B. Piper, Jr., an independent real estate appraiser, testified for the County. Vinson said that he used the income, market data, and replacement cost methods to determine fair market value. By the economic rent approach, capitalizing the economic rent at 11½%, he arrived at a value of $15,450,000 for the fee simple interest, exclusive of encumbrances. In his opinion, the economic rent could be obtained without renovations other than painting. By the replacement cost approach he valued the property at $16,200,000. Under his third method, using market data based primarily on two buildings, one in Crystal City and the other in Rosslyn, Vinson valued the property at $18,537,347.

Piper testified that the fair market value of the property was $13,900,000. Using the economic rent approach, capitalizing income at 11%, he valued the property at $13,695,255. He then arrived at fair market value by another approach, valuing the unencumbered "leased fee interest" at $8,605,500 and adding the value of the leasehold interest at $5,281,300 to make a total of approximately $13,900,000.

Piper used comparable market data in making his appraisal. One of his "comparables" was the same building in Crystal City utilized by Vinson. Piper conceded, however, that the conditions of the buildings were dissimilar. Piper also acknowledged, in answer to an inquiry by the trial court, that it is appropriate to deduct the cost of rehabilitation from the capitalized value of economic rent. He conceded that he had not done so in making his appraisal of the Van Buren Building. He also conceded that capitalizing the contract income at 11% would result in a valuation of $6,345,000; if the estimated value of $5,000,000 for the leasehold were added, the total value would be $11,345,000.

In his letter opinion, the trial judge summarized the evidence. Noting that there are three acceptable methods used for appraising real estate — market data (comparable sales), capitalization of income, and reproduction cost less depreciation — he concluded that since the property was income-producing, income should be the primary consideration. The judge stated that it is unrealistic to presume that the Taxpayer could buy the GSA leases for the value placed on them by the County or to assume that the property can be leased for the "hypothetical" economic rent on each assessment date. The judge then stated that the most "relevant and persuasive" of the available market data was the sale to the Taxpayer, which the judge concluded was given "little or no weight" by the County. Finding that the Van Buren Building was assessed at greater than its fair market value on January 1, 1980, the judge, pursuant to the provisions of Code § 58-1148, now § 58.1-3987 (Repl. Vol. 1984), determined that the assessment should be reduced to $11,351,600. By final order entered January 28, 1982, the court reduced the assessment, directed the assessment to be apportioned between the land and building as it was on January 1, 1979, and ordered the County to refund to the Taxpayer his overpayment of taxes, with interest.

The applicable legal principles are well settled; they have been set forth in *Bd. of Sup.* v. *Donatelli & Klein,* 228 Va. 620,

325 S.E.2d 342 (1985), this day decided. We will summarize them again.

There is a clear presumption that an assessment is valid; the presumption can be rebutted only upon a showing of manifest error or total disregard of controlling evidence. *City of Richmond* v. *Gordon,* 224 Va. 103, 110, 294 S.E.2d 846, 850 (1982). The burden is on the taxpayer to show that his property is assessed at more than fair market value or that the assessment is not uniform in its application. Code § 58-1145, now § 58.1-3984 (Repl. Vol. 1984).

A trial court which finds manifest error in the assessment or disregard of controlling evidence may properly conclude that the presumption has been rebutted and fix the assessment in accordance with the evidence. Code § 58-1148, now § 58.1-3987 (Repl. Vol. 1984); *see Harrisonburg City* v. *Taubman,* 212 Va. 28, 30, 181 S.E.2d 654, 656 (1971). The case then comes to us with the presumption that the trial court's ruling based upon its findings of fact is correct. This presumption is rebuttable if the ruling is plainly wrong or without evidence to support it. *Donatelli & Klein,* 228 Va. at 627, 325 S.E.2d at 345.

The recent sale price of property is not conclusive evidence but is to be given substantial weight in determining fair market value. *Donatelli & Klein,* 228 Va. at 628, 325 S.E.2d at 345; *Viscose Corp.* v. *City of Roanoke,* 205 Va. 192, 196, 135 S.E.2d 795, 798 (1964). Fair market value is the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing. *Donatelli & Klein,* 228 Va. at 628, 325 S.E.2d at 345.

The real estate to be taxed is the fee simple interest, not the reversion after expiration of a leasehold interest. *Fairfax County* v. *Nassif,* 223 Va. 400, 403-04, 290 S.E.2d 822, 824 (1982). As a general rule, determination of fair market value by capitalization of economic rents is the preferred method, but consideration of contract rents is required in ascertaining economic rents. *Id.* at 405, 290 S.E.2d at 825. Where there has been a recent sale of the property, of course, such sale should be considered. *Donatelli & Klein,* 228 Va. at 628, 325 S.E.2d at 346. In *Nassif,* and in two cases relied upon in *Nassif, Railroad Company* v. *Commonwealth,* 203 Va. 294, 124 S.E.2d 206 (1962), and *RF&P* v. *Corporation Commission,* 219 Va. 301, 247 S.E.2d 408 (1978), there had been no recent sale of the subject property.

The trial judge, as shown in his letter opinion, was familiar with the controlling legal principles. The evidence fully supports his finding that the property was assessed at more than its fair market value. Indeed, the County's expert witness, Piper, estimated the fair market value to be $13,900,000, substantially less than the amount of the assessment.

The County argues that the sale price represented only the value of the reversionary interest in the property after expiration of the unfavorable leases with which it was burdened. Therefore, the argument continues, the sale price is irrelevant and should be disregarded; fair market value should properly be determined, consistently with *Nassif,* by capitalizing the economic rents. The Taxpayer's expert witness, Downs, utilized this method and arrived at a gross value of $14,628,371. He testified to the poor condition of the property, however, and to the existing partitioning of space in a manner unacceptable to potential tenants. He estimated a minimum cost of $4,500,000 to put the property in such condition as to command the economic rent. Accordingly, he deducted this cost of rehabilitation from the gross value to determine the fair market value. Piper agreed with this methodology, although neither he nor the assessor, Vinson, made any deduction for this expense. Vinson was of opinion that only painting would be required to obtain economic rent. The trial court, however, properly could reject this evidence and accept Downs's testimony.

In tax and condemnation cases involving valuations of undeveloped real estate, this Court has held that fair market value is the present actual value of land as adapted to general or special uses. *Fruit Growers* v. *Alexandria,* 216 Va. 602, 609, 221 S.E.2d 157, 162 (1976); *Appalachian Power Co.* v. *Anderson,* 212 Va. 705, 708, 187 S.E.2d 148, 152 (1972). The use to which the land is best adapted should be considered. *See Appalachian Elec., etc., Co.* v. *Gorman,* 191 Va. 344, 355, 61 S.E.2d 33, 38 (1950). But any such use considered must be reasonably probable and immediate. *Id.* at 354, 61 S.E.2d at 38. The valuation may not be based on remote or speculative profits resulting from future expenditures or improvements. *See Fruit Growers,* 216 Va. at 609, 221 S.E.2d at 162; *Appalachian Power,* 212 Va. at 708, 187 S.E.2d at 152. Everything which affects market value must be considered. *Appalachian Elec.,* 191 Va. at 354, 61 S.E.2d at 38. These principles, though developed in factually different situations, have bearing on the present case. The value of Taxpayer's property should be

based on its best use where that use is reasonably expected, and it is proper for the assessment in this case to reflect market rents. However, in considering all factors which affect the market value of the property, the assessment must also reflect the expenditures and improvements necessary to allow the property to achieve its maximum potential. The trial court properly ordered reduction in the assessment where the evidence indicated major rehabilitation was necessary before the subject property could yield economic rents.

It is true, as the County notes, that the trial court found the sale price to be more persuasive than other available market data. But the court did not order the assessment reduced to the amount of the sale price. Moreover, the trial judge stated in his letter opinion that Piper had conceded that the building in Crystal City which he and the assessor relied upon for market data varied substantially from the Van Buren Building. Downs also testified that the same building, having more than 800 parking spaces and a large amount of commercial retail space, was entirely different from the subject property. This witness used the income approach in determining fair market value, but he considered the contract rents in arriving at economic rent. He concluded that the sale price represented fair market value.

It is apparent that the trial court did not accept the comparables presented by the County's witnesses. The record supports the court's rejection of this evidence. It is also apparent from the record that the court would expect the gross fair market value, if established by capitalization of economic rent, to be reduced by the cost of putting the property into condition to obtain the projected increased rent.

By plain implication, the trial court found that the County had ignored the sale price and the contract rents and had relied entirely on highly speculative economic rents. Downs, on the other hand, considered the sale price and the contract rents in developing fair market value by a more conservative capitalization of economic rents. Moreover, the fair market value established under one theory by the County's expert, Piper, was very close to the 1979 assessment figure to which the 1980 assessment was reduced by the trial court.

The County argues that the trial court's judgment is technically infirm for two reasons. First, the court adopted the amount of the prior year's assessment rather than a value urged by either

of the parties. This action was within the court's authority under Code § 58-1148, now § 58.1-3987 (Repl. Vol. 1984), which provides:

> For the purpose of reducing or increasing the assessment and adjusting the taxes the court shall have all the powers and duties of the authority which made the assessment complained of . . . .

The court was not bound by the values argued by the parties or those fixed by witnesses. Rather, the court properly could weigh the evidence and establish a value accordingly. Where, as here, the court selected a value supported by the evidence, it has acted within the statutory grant of authority.

■ The County next contends that the trial court's order did not comply with former Code § 58-1149 (Repl. Vol. 1974) requiring that the "facts proved be certified."* The County says the court failed to make specific findings of facts in accordance with this section. This argument is without merit. In his letter opinion of January 11, 1982, the trial judge recited the facts on which he based his decision. He expressly incorporated his letter opinion in the amended order of January 28, 1982. This procedure was sufficient to comply with the requirements of former Code § 58-1149.

■ We hold that the court's action was supported by the evidence and we will affirm the judgment.

*Affirmed.*

COMPTON, J., dissenting.

(No dissenting opinion).

---

*A portion of this provision was incorporated in Code § 58.1-3984 (Repl. Vol. 1984), but the requirement that the order certify the facts proved was repealed. (Acts 1984, c. 675). The new provision was effective January 1, 1985.