## ROBERT H. SMITH, ET AL.

## V.

## BOARD OF SUPERVISORS OF FAIRFAX COUNTY, ET AL.

Record No. 841017

October 9, 1987

Present: All the Justices

*Thomas F. Farrell, II (Haynie S. Trotter; Boothe, Prichard & Dudley*, on briefs), for appellants.
*A. Robert Cherin, Senior Assistant County Attorney (David T. Stitt, County Attorney*, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This is an appeal from an order denying certain taxpayers relief from allegedly erroneous assessments of real estate. It raises the question whether a circuit court may properly remand a challenged assessment to the assessor for further consideration. We also revisit, for the fourth time in recent years, the methodology employed by Fairfax County for the appraisal of income-producing property. See *Fairfax County* v. *Nassif,* 223 Va. 400, 290

S.E.2d 822 (1982) (*Nassif I*); *Bd. of Sup.* v. *Donatelli & Klein*, 228 Va. 620, 325 S.E.2d 342 (1985); and *Nassif* v. *The Board of Supervisors*, 231 Va. 472, 345 S.E.2d 520 (1986) (*Nassif II*).

Robert H. Smith and others (the taxpayers) filed two applications in the circuit court pursuant to former Code § 58-1145 against the Board of Supervisors and the Supervisor of Assessments of Fairfax County (collectively, the County) for relief from allegedly erroneous assessments of two high-rise office buildings in Skyline Plaza, a development located in the Bailey's Crossroads area of Fairfax County. The first building, known as Skyline I, was completed in 1972. It was owned by Robert H. Smith, John D. Benn, Jr., and others, trading as Third Skyline Associates. The second building, known as Skyline II, was completed in 1979. It was owned by Robert H. Smith, John D. Benn, Jr., and others, trading as Eighth Skyline Associates. The two buildings were nearly identical in design, and each contained approximately 250,000 square feet of rentable office space.

The Supervisor of Assessments of Fairfax County assessed the buildings, for the tax years 1980, 1981, and 1982 as follows:

|      | Skyline I      | Skyline II     |
|------|----------------|----------------|
| 1980 | $11,401,505    | $11,658,400    |
| 1981 | 14,100,165     | 14,781,895     |
| 1982 | 15,781,390     | 16,431,445     |

From 1979 to 1982, the assessed valuation of Skyline I had increased 74.8%. From 1980 to 1982, the assessed valuation of Skyline II increased 40.9%. At trial, the Supervisor of Assessments admitted that these increases were not based upon any physical changes to the buildings, or any change in the actual net income derived from them. Rather, the increases were based upon the County's practice of making a voluntary annual survey of the rents and expenses experienced by all commercial properties of similar size and age in the county, collecting these figures to determine the "typical" rents and expenses such buildings might be expected to experience, and applying those "typical" figures to the property being appraised in order to determine "economic income." The theoretical stream of income thus developed was applied to a capitalization rate developed by the County in order to arrive at an assessed valuation for tax purposes.

The actual contract rents received by the taxpayers, and the actual expenses they incurred, were not considered by the County in developing the assessed valuations of the individual properties under consideration, except to the extent that they went into the county-wide mix which determined the County's "typical" economic income model. Although the County's witnesses insisted that the "typical" model did not represent a simple averaging of figures, and that the rent figures were "weighted" to some extent for different geographic areas in the County, the witnesses never specified the nature and extent of the weighting process. In essence, the County's method of determining economic income for assessment purposes was the same as that we considered, and held to be erroneous, in *Nassif I*, *Donatelli*, and *Nassif II*.

The petitions were consolidated for trial. After hearing evidence, the court found that the County had given little, if any, consideration to the contract rent and actual expenses experienced by Skyline I and II. Over the taxpayers' objection, the court declined to enter a corrected assessment based on the evidence before it, and instead, remanded the cases to the Supervisor of Assessments with direction to "revaluate within 30 days the assessments upon the properties owned by the petitioners by giving proper weight and documentation to the contract rental and actual expenses of the buildings involved," citing *Nassif I*.[1]

In October 1983, the month following the remand, the County filed a "Statement of Defendants on Remand." This document began by stating that the County, having reconsidered its appraisals as directed by the court, had "concluded that the original values assigned accurately reflected fair market value." The statement went on to say that the County's economic rents assigned to the buildings were very close to, or lower than, the actual rents reported by the taxpayers. The principal controversy was that the County "allowed" expenses for the buildings that were substantially less than those the taxpayers had actually experienced. The County disregarded the actual expenses because it concluded that "the expenses allowed by the County were supported by the market while the expenses claimed to be actual were dramatically higher than the market." Because the actual figures for rents less

[1] In fairness to the trial court, it must be noted that of the three Fairfax cases mentioned above, only *Nassif I* had been decided at the time of the hearing below, and the court remanded the case expressly to determine whether the assessor had complied with the holding of that case.

expenses were at variance with the County's "typical" economic income model, the County concluded that "no change was warranted in the total appraised value[s]." The assessments remained unchanged.

By letter opinion, the court held that the assessments were entitled to a presumption of correctness; that the taxpayers, in order to carry their burden of overcoming the presumption, must show "manifest error in the manner of making the estimate, or that evidence which should be controlling has been disregarded," citing *City of Richmond* v. *Gordon*, 224 Va. 103, 294 S.E.2d 846 (1982); and that the taxpayers had failed to carry that burden. A final order was entered on April 12, 1984, denying both petitions. We granted the taxpayers an appeal.

On appeal, the taxpayers argue that the court, having initially determined that the assessments were erroneous in that the County had failed to "consider the actual rental income as a relevant factor in the economic rent," lacked authority to remand the cases to the Supervisor of Assessments for further consideration. We agree. Former Code § 58-1148 (1974 Repl. Vol.) (recodified and amended as § 58.1-3987 (1984 Repl. Vol.)) provided, in pertinent part:

If the court be satisfied from the evidence that the assessment is erroneous . . . the court may order that the assessment be corrected. If, in the opinion of the court, the assessment exceeds the proper amount, the court may reduce the assessment to what in its opinion based on the evidence is the fair market value of the property involved and shall order that the applicant be exonerated from the payment of so much as is erroneously charged . . . . If, in the opinion of the court, the assessment be less than the proper amount, the court shall order the assessment increased to what in its opinion is the fair market value of the property involved and shall order that the applicant pay the proper taxes.

For the purpose of reducing or increasing the assessment and adjusting the taxes in either case the court shall be clothed with all the powers and duties of the authority which made the assessment complained of, as of the time when such assessment was made, and all powers and duties conferred by law upon such authority between the time such assessment was made and the time such application is heard.

■ The procedure for correction of erroneous assessments is entirely statutory. It contains no provision for remand to the executive branch of government. When the statutory procedure is invoked, the determination of the correctness of a challenged assessment, as well as any grant of appropriate relief, become matters exclusively of judicial concern. *See Arlington County Board* v. *Ginsberg*, 228 Va. 633, 640, 325 S.E.2d 348, 352 (1985). The trial court erred by failing to grant appropriate relief based upon the evidence before it.

■ Although the foregoing error requires reversal, it does not follow that we must remand the cases in order for further litigation. Code § 8.01-681 requires us, when reversing a case on appeal, to "render final judgment upon the merits whenever, in the opinion of the court, the facts before it are such as to enable the court to attain the ends of justice." The record before us is sufficient for that purpose.

The taxpayers introduced the testimony of N. McKenzie Downs, who qualified as an expert appraiser of real estate. He testified that, based on a study of the office rental market in the Washington, D.C., area, the Skyline buildings were very efficiently managed, that the owners were attracting the highest rent the market would support, and that "the actual operating costs are as low as any in the area for a comparable building." Thus, he concluded, in these cases actual net income was equivalent to economic income. Applying a 10.5% capitalization rate to the actual net income derived from the two buildings for the three years in question, he concluded that the fair market values were as follows:[2]

|      | Skyline I    | Skyline II   |
|------|--------------|--------------|
| 1980 | $ 9,541,000  | $ 9,000,000  |
| 1981 | 9,541,000    | 11,697,000   |
| 1982 | 11,276,000   | 14,178,000   |

The County's evidence offered to refute the foregoing consisted of the testimony of the appraisers who had, under the direction of

[2] The witness testified that the appropriate capitalization rate might vary between 10.5% and 11% with fluctuations in prevailing interest rates. He gave a range of values using both rates. The figures above represent those based on the lower rate, yielding the highest appraised valuations to which he testified, rounded to the nearest thousand.

the Supervisor of Assessments, formulated the County's challenged assessments. As stated above, the methodology they employed was essentially the same as that we have disapproved in three prior cases arising in Fairfax County. A brief examination of those cases is illustrative.

In *Nassif I*, we said, "the record shows conclusively that the assessor ignored contract rent in appraising the property . . . . [T]he assessor erred in failing to consider contract rent in making the assessment." We held that, "as a general rule, economic rent is the measure to be used in capitalizing income for fair-market-value determination; however, contract rent is relevant as evidence of economic rent." 223 at Va. 404-05, 290 S.E.2d at 824-25.

We remanded *Nassif I*. On remand, a scenario was played out strikingly similar to that now before us. The Supervisor of Assessments (who also testified in the present case) reviewed the appraisal that had been remanded in *Nassif I*, and testified that the County's original opinion was correct. He said: "I feel the contract rent in this case here is low and does not reflect the . . . market." The trial court entered an order upholding the original assessment. That order was appealed to us in *Nassif II*. There, we said that it was clear that "the assessment was based on a methodology which we had already declared improper." 231 Va. at 483, 345 S.E.2d at 526. We pointed out that we had defined economic rent as the amount that a typical lessee should be willing to pay for the right to use and occupy the premises for a stated period. We added, "[t]hat definition focuses upon the property that is being valued and plainly indicates that the determination of economic rent must be specific to the property under review as opposed to some abstract or theoretical property." *Id.* at 484, 345 S.E.2d at 527. We held that the County's approach, whether a simple averaging of rents or a more complex development of theoretical, market-wide rent levels, failed to meet our definition of economic rent "because it leads to values unrelated to the specific property being appraised." *Id.* We held the assessment erroneous, corrected it to accord with the expert testimony adduced by the taxpayer, and entered final judgment here.

In *Donatelli*, another case from Fairfax County, we observed that the County's economic model was based on rents and expenses derived from commercial properties throughout the County. The assessor had available the actual income and expenses of the property under consideration, but chose to base his

appraisal exclusively on the county-wide economic rent model. We said: "Thus, in the name of uniformity, the County's model can produce assessment values that are greater than actual fair market values because the properties' geographical locations and other individual characteristics are not considered." 228 Va. at 630, 325 S.E.2d at 347. We observed that the preference for uniformity of assessments must stop short of assessment at greater than fair market value. *Id.* at 629, 325 S.E.2d at 347. We emphasize here that Article X, § 2 of the Constitution of Virginia protects all taxpayers from assessments in excess of fair market value.

In *Donatelli*, the trial court found that the assessor had erred by failing to give due consideration to contract rent. Adopting the taxpayers' appraisal as proper, the trial court corrected the assessment. We affirmed.

In the present appeal, the County's methodology contains an additional infirmity which was the primary cause of the disparity in the evidence. The County aggregated the expenses reported in its survey of all commercial properties, then divided this aggregate expense figure into its aggregate estimate of the fair market value of all the properties reported. This gave the County an "expense ratio" which the County applied to theoretical economic rent for all buildings, regardless of location. The ratio for Skyline I for 1980, for example, was 37.5%. Thus, 62.5% of economic rent was treated as economic net income. The County capitalized the latter figure to obtain its assessed valuation.

As the taxpayers point out, the County's use of a theoretical expense ratio has a distorting effect on appraised values. Rents vary widely with location, physical condition, and other individual characteristics governing the relative desirability of competing rental properties. Maintenance costs, however, are nearly uniform. Thus, a building with a lower rental income would be unfairly penalized by the use of a county-wide "expense ratio." The taxpayers' witnesses testified that the more reliable method is to prorate expenses for each building over the square footage of rentable space in the building.

In the trial of a petition to correct an erroneous assessment, there is a clear presumption that the assessment is valid; the presumption can be rebutted only upon a showing of manifest error or total disregard of controlling evidence. *Ginsberg*, 228 Va. at 640, 325 S.E.2d at 352. Where an assessment is based on the capitalization of income, contract rent and actual expenses must be

considered in arriving at economic income, as we expressly held in *Nassif I*, *Donatelli*, and *Nassif II*. Accordingly, a taxpayer who is able to show that actual rents and expenses were ignored, or given only token consideration in the formulation of an assessment, will carry his burden of overcoming the presumption of correctness to which the assessment was entitled. At that point, the burden shifts to the assessing authority to go forward with evidence tending to prove that the actual rent and expenses do not fairly reflect economic net income *for the particular property being appraised*. If the assessor fails to carry that burden, the assessment should be corrected. The County made no such showing here.

The County contends that it did not have the actual rental and expense figures from the Skyline buildings in time to take them into consideration in fixing the assessed valuations. The County relies on *City of Richmond* v. *Gordon*, 224 Va. 103, 294 S.E.2d 846 (1982), for the proposition that an assessing authority is entitled to use the best information available to it when the owner fails or refuses to furnish the owner's actual income and expense figures.

Our review of the record does not bear out the County's factual contention. The taxpayers' witnesses testified that they timely furnished the County the actual income and expense figures for both buildings each year. The County's witnesses admitted that they had in their files, but did not consider, the actual figures for 1980 and 1981 before those assessments were made. The County's evidence is less clear with regard to the 1982 figures — they were apparently received after the appraisal was written but several months before it was published. In any event, it is clear that all actual figures were in the County's hands when the trial court remanded the cases to the Supervisor of Assessments for further consideration. The County, however, again chose to ignore them. *Gordon* is, therefore, inapposite.

■ Because the taxpayers carried their burden of rebutting the presumption of correctness of the assessments, and because the taxpayers' evidence of value was uncontradicted and unrefuted by any competent evidence, we will reverse the order appealed from. Because the facts before us are sufficient to enable us to attain the ends of justice, we will adopt the taxpayers' evidence, as set forth above, as the fair market values of the properties for the years in question, correct the assessments accordingly, order the

taxpayers exonerated from any taxes erroneously charged pursuant to the former assessments, and enter final judgment here.

*Reversed and final judgment.*