# Tysons International Limited Partnership, et al.

## v.

# Board of Supervisors of Fairfax County

Record No. 900673

January 11, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and Cochran, Retired Justice

6

*Thomas F. Farrell, II (Haynie S. Trotter; Joan B. Tucker; McGuire, Woods, Battle & Boothe,* on briefs), for appellants.
*A. Robert Cherin, Deputy County Attorney (David T. Stitt, County Attorney,* on brief), for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

In this appeal, we decide whether the trial court erred in finding that the Fairfax County tax assessor properly considered contract rent as relevant evidence of economic rent[1] in assessing two pieces of income-producing property. We have examined the Fairfax County economic-rent methodology of assessing commercial prop-

---

[1] "Economic rent" is the "amount that a typical [lessee] should be willing to pay for the right to use and occupy the premises for [a stated period]." *Shaia* v. *City of Richmond,* 207 Va. 885, 895, 153 S.E.2d 257, 265 (1967).

erty in four previous cases: *Fairfax County* v. *Nassif*, 223 Va. 400, 290 S.E.2d 822 (1982) (*Nassif I*); *Bd. of Sup.* v. *Donatelli & Klein*, 228 Va. 620, 325 S.E.2d 342 (1985); *Nassif* v. *The Board of Supervisors*, 231 Va. 472, 345 S.E.2d 520 (1986) (*Nassif II*); and *Smith* v. *Board of Supervisors*, 234 Va. 250, 361 S.E.2d 351 (1987). In all four instances, we held that the County assessor had not properly considered contract rent in assessing the particular property involved. We make the same holding here and reverse.

The record shows that Tysons International Limited Partnership (Tysons International) is the owner of several parcels of real estate improved by a commercial office building in the Tysons Corner area of Fairfax County and that Tysons Office Center Limited Partnership (Tysons Office Center) owns several other similarly improved parcels about two blocks away in the same area. The International building contains approximately 164,000 square feet of leasable space and the Office Center structure contains approximately 144,000 square feet.

In late 1988, pursuant to Code § 58.1-3984, Tysons International and Tysons Office Center (collectively, the taxpayers) filed applications for relief from allegedly erroneous real estate assessments on their property for the tax years 1986, 1987, and 1988. Later, Tysons International withdrew its application for the year 1986.

The two applications were consolidated for trial. Following a hearing, the trial court by order dated February 28, 1990, denied the taxpayers any relief and dismissed their applications. We granted this appeal.

For the years in dispute, the County assessed the two buildings as follows:

|       | *International* | *Office Center*      |
| ----- | --------------- | -------------------- |
| 1986  | N/A             | $18,171,915          |
| 1987  | $21,344,755     | $18,543,415          |
| 1988  | $25,639,660     | $22,856,415[2]       |

[2] For the year 1985, the International building was assessed at $17,354,309 and the Office Center building at $15,542,325. The 1988 assessment represents an increase of 47.7% over the 1985 figure on the International building and 47.1% on the Office Center building. It is undisputed, however, that there had not been any change in the physical structure of the two buildings or any improvement in net operating income.

In making its assessments, the County employed the capitalization of income method of appraising property, and the taxpayers agree this was the proper method. The taxpayers do not agree, however, that the County used the proper income and expense figures in capitalizing income. The taxpayers contend the assessor used only market rent and disregarded contract rent in violation of our prior decisions on the subject.

The County concedes it assessed the taxpayers' property according to the market approach. The County insists, however, that it properly considered contract rent, and it says that the trial court found it had indeed " 'reviewed' and 'considered' the actual income and expenses." Furthermore, says the County, the court "made *no* finding that [its] review and consideration were defective in any way." (Emphasis in original.)

In a letter opinion, the trial judge cited *Arlington County Board* v. *Ginsberg*, 228 Va. 633, 640, 325 S.E.2d 348, 352 (1985), and noted that the assessments in question are "clothed with a presumption of validity which can be rebutted only upon a showing of the tax assessor's manifest error or total disregard of controlling evidence." The judge also noted that "the burden is upon the taxpayer to show his property is assessed at more than fair market value or that the assessment is not uniform in its application or that it is otherwise invalid or illegal."

Continuing and citing *Smith*, 234 Va. at 258, 361 S.E.2d at 355, the trial judge stated that "[t]he taxpayer's burden is satisfied where [he] is able to show that actual income and expenses were ignored, or given only token consideration in the formulation of an assessment." Further, quoting from the same case, the judge said that "[a]t that point, the assessing authority must 'go forward with evidence tending to prove that the actual rent and expenses do not fairly reflect economic net income *for the particular property being appraised.*' *Id.* (emphasis in original)."

After stating that actual income and expenses are not controlling in the determination of the taxable value of real estate but are relevant factors to be considered by a trial court in deciding whether a particular assessment is excessive, the trial judge described the County's market-rent methodology as follows:

[T]he County relied on surveys of the actual rental income and expenses County taxpayers reported they were achieving. The County also relied on information derived from deeds

and deeds of trust reflecting the sales price of buildings, and from on-site inspection of buildings, throughout the County and in the specific areas at issue. The County then deducted 'normal' vacancy losses as well as expenses, in the form of an expense ratio, to achieve a net operating income for the building to be assessed. According to the County's testimony, a taxpayer's particular rental income and expenses are compared to this figure and adjustments may be made to reflect the taxpayer's actual data. The resulting net operating income is then capitalized into value. The resulting figure is also compared with the sales price of similar properties to assure that the assessment of the particular property fairly reflects the value of the fee simple and is uniform.

The trial judge then noted the taxpayers' argument that the County " 'did not consider' their actual income and expenses as required under Virginia Law." The judge observed that the County "justified its refusal to base its assessments on the taxpayers' actual rent on the ground that the actual rent did not fairly reflect economic rent, arguing inferentially that the legal requirement to *consider* actual rent is not a mandate to *adopt* actual rent as its assessment basis under all circumstances." (Emphasis in original.) Concluding this part of her discussion, the trial judge made this statement: "Clearly, under Virginia Law, having considered the taxpayers' actual rent, the County is not required to adopt it in its assessment if it determines, as it did, that the taxpayer's actual rent does not fairly reflect economic rent."

We think it is clear from the foregoing excerpts that the trial court made three important findings. First, the court found that the taxpayers satisfied their burden of showing the County ignored or gave only token consideration to actual income and expenses. Next, the court found that the burden then shifted to the County to go forward with evidence showing it considered actual rent and expenses, but determined they did not fairly reflect economic net income.[3] Finally, the court found that the County produced suffi-

---

[3] The County makes the argument on brief that the burden "did not shift to the County to prove that actual rent did not fairly reflect economic rent for the appraised property." But the trial judge's opinion can be given no reasonable meaning except that the taxpayers had satisfied their burden and that the burden of going forward with evidence had shifted to the County. The record shows that the trial court denied the County's motion to strike the taxpayers' evidence and directed the County Attorney to proceed with his evidence.

cient evidence to show it properly "considered the taxpayers' actual rent," but determined it did not fairly reflect economic rent.

We find no fault with any of these findings except the last one. The finding that the County properly considered contract rent represents the determinative point in the case, and we question whether sufficient evidence supports the finding.[4]

[redacted] We need not look beyond the trial judge's opinion itself to discern the character of the evidence the County submitted to show it had properly considered contract rent. The trial judge stated:

> In applying the [market-rent] methodology to arrive at the assessments in this case, the County did not use the taxpayers' actual income and expenses. While taxpayers' actual income and expense data were reviewed by the tax assessor in preparing the . . . assessments, *the taxpayers' figures were not accepted as the basis for further calculations on the ground that the figures were too low and were not reflective of economic rent.* The tax assessor thus adopted as economic rent the figures generated from the County's data base comprised of information from the sources described above.

(Emphasis added.) Significantly, the County's refusal to use the taxpayers' actual rent figures because they were "too low and were not reflective of economic rent" is the same sort of treatment we found improper in *Nassif I*, *Donatelli & Klein*, *Nassif II*, and *Smith*.

---

This was certainly a burden-shifting ruling, and the ruling has not been made the subject of an assignment of cross-error. Hence, we will not consider the County's argument. Rule 5:25.

[4] The County stresses the fact that it "presented testimony of assessors and an independent expert with exhibits showing numerous comparable sales and leases supporting the County's economic rent figures and its final fair market value estimate." This information is interesting, but its inclusion in the County's argument at this point in the proceeding suggests a harmless error approach, which merely begs the question this Court has to decide. The property was assessed according to the capitalization of income method. One of the elements relevant to a determination of the income component of the capitalization equation is contract rent. If the County's assessor failed to consider contract rent or gave it only token consideration, then the error is "manifest," not merely harmless, *see Arlington County Board* v. *Ginsberg*, 228 Va. 633, 640, 325 S.E.2d 348, 352 (1985), despite evidence of "comparable sales and leases [otherwise] supporting the County's economic rent figures and its final fair market value estimate."

*Nassif I* and *Nassif II* demonstrate the point. In *Nassif I*, "the record [showed] conclusively that the assessor ignored contract rent in appraising the property," 223 Va. at 404, 290 S.E.2d at 824-25, and "used instead enhanced figures representing estimated 'economic rent,' as derived from market data," *id.* at 402, 290 S.E.2d at 823. The trial court held that contract rent alone should be used and ruled the assessment invalid. We reversed, saying that "as a general rule, economic rent is the measure to be used in capitalizing income for fair-market-value determination; however, contract rent is relevant as evidence of economic rent." *Id.* at 405, 290 S.E.2d at 825. We remanded for further proceedings consistent with the views expressed in our opinion. *Id.*

*Nassif II* was appealed to this Court after a retrial in response to our remand. At the retrial, the taxpayers' expert, who originally appraised the property using only contract rent, testified that he had made new calculations and arrived at a higher valuation by using economic rent and considering contract rent as relevant evidence of economic rent. 231 Va. at 476, 345 S.E.2d at 522. On the other hand, the County's assessor testified on retrial he felt " 'contract rent . . . is low and does not reflect the current . . . market.' " *Id.* at 478, 345 S.E.2d at 523. Accordingly, the County merely "resubmitted its original . . . appraisal . . . and said it was 'going with' that appraisal," which was based upon economic rent alone. *Id.* at 474, 345 S.E.2d at 521.

The trial court upheld the assessment. We reversed, holding that "in determining economic rent, contract rent must be factored into the formula; it cannot be disregarded." *Id.* at 484, 345 S.E.2d at 527. We also said:

> [T]he first assessor . . . completely ignored contract rent. We held that to be error. Then, the second assessor testified that he did not use contract rent because it was too low and that he confirmed the first assessment. It follows, in light of *Nassif I*, that what happened on remand must also be error.

*Id.*

█ Since the manner in which contract rent was treated by the assessor in this case mirrors the way the subject was treated in *Nassif I* and *Nassif II* and the treatment there was held to be erroneous, it follows that the assessor did not give proper consideration to contract rent in this case and that what happened here is

also erroneous. Accordingly, we must reverse the judgment of the trial court. It does not follow, however, that we must remand the case for a redetermination of the assessment.

In *Smith*, we found the County had not properly considered contract rent and we reversed the trial court for its error in approving the assessment. We noted, however, that Code § 8.01-681 requires this Court, when reversing a case on appeal, to " 'render final judgment upon the merits whenever, in the opinion of the court, the facts before it are such as to enable the court to attain the ends of justice.' " 234 Va. at 255, 361 S.E.2d at 353-54. We said the facts before us were sufficient for that purpose because the testimony of the landowners' expert appraiser showed "the owners were attracting the highest rent the market would support, and . . . 'the actual operating costs [were] as low as any in the area for a comparable building.' " *Id.* at 255, 361 S.E.2d at 354. Accordingly, we adopted the taxpayers' evidence "as the fair market values of the properties for the years in question" and corrected the assessments accordingly. *Id.* at 258, 361 S.E.2d at 356.

The record permits the same disposition here. The taxpayers' expert appraiser, N. McKenzie Downs, testified that the taxpayers were attracting the highest rent the market would support, that the buildings in question were receiving excellent management, and that the expenses of operation as well as the vacancy and rent losses were reasonable. Downs opined that economic rent was being obtained because the buildings in question were multiple tenant structures, "enough leases [were] turning over continually to stay abreast of the market," the two buildings were in competition with one another, and there were no long-term leases.

Downs testified that the fair market values of the property for the tax years in question were as follows:

|  | *International* | *Office Center* |
|---|---|---|
| 1986 | N/A | $17,247,000 |
| 1987 | $19,392,000 | $17,247,000 |
| 1988 | $20,080,000 | $16,590,000 |

As in *Smith*, the County offered nothing to contradict or refute the taxpayers' evidence of value except evidence of appraisals reached by way of a faulted methodology. Accordingly, we will adopt the taxpayers' evidence as the fair market value of the two buildings for the tax years in question, correct the assessments correspondingly, order the taxpayers exonerated from any taxes

erroneously charged pursuant to the disputed assessments, and enter final judgment here in favor of the taxpayers.

*Reversed and final judgment.*

JUSTICE COMPTON, dissenting.

"Ascertainment of property values are matters of pure opinion and the courts must, within reasonable bounds, permit the exercise of that opinion, lest they be converted into boards of assessment thereby arrogating to themselves the function of the duly constituted tax authorities." *Richmond, Fredericksburg & Potomac R.R. Co.* v. *State Corporation Comm'n*, 219 Va. 301, 313, 247 S.E.2d 408, 415 (1978). In this case, I would leave the assessment of Fairfax County property to Fairfax County.

The holding in *Fairfax County* v. *Nassif*, 223 Va. 400, 290 S.E.2d 822 (1982), is that, "as a general rule, economic rent is the measure to be used in capitalizing income for fair-market-value determination; however, contract rent is relevant as evidence of economic rent." *Id.* at 405, 290 S.E.2d at 825. We did not say in that case, or in any subsequent case, that once the assessor has "considered" contract rent, a county is required to adopt it as a part of its assessment, if such rent does not fairly reflect economic rent. Indeed, we have held to the contrary.

In *City of Richmond* v. *Gordon*, 224 Va. 103, 111, 294 S.E.2d 846, 851 (1982), we decided that while "evidence of actual operating figures, such as income, expenses, and vacancy rates . . . is relevant when property has been valued by use of the capitalization of income approach . . . such evidence is not conclusive and is merely one of the factors to be taken into consideration by the trial court in determining whether the challenged assessment is excessive."

Here, the trial court made explicit factual findings, which should be binding on appeal. For example, the court found that the County's methodology included reliance "on surveys of the actual rental income and expenses County taxpayers reported they were achieving" and included review of "taxpayers' actual income and expense data." There was no evidence that actual rents and expenses were "ignored," not considered, "disregarded," or given "only token consideration," as in the cases relied upon by the majority. *See Smith* v. *Board of Supervisors*, 234 Va. 250, 258, 361

S.E.2d 351, 355 (1987) ("given only token consideration" and "did not consider"); *Nassif* v. *The Board of Supervisors*, 231 Va. 472, 484, 345 S.E.2d 520, 527 (1986) ("disregarded"); *Bd. of Sup.* v. *Donatelli & Klein*, 228 Va. 620, 630, 325 S.E.2d 342, 347 (1985) ("disregarded"); *Fairfax County* v. *Nassif*, 223 Va. at 404, 290 S.E.2d at 825 ("ignored"). Rather, the evidence affirmatively established that the County reviewed and relied upon actual rent figures. In my opinion, nothing more is required.

Consequently, I disagree with the appellate finding "that the assessor did not give proper consideration to contract rent in this case," and I would affirm the judgment of the trial court.