## CIRCUIT COURT OF THE CITY OF RICHMOND

Arlington County Board and
The City of Alexandria

v.

Commonwealth of Virginia, etc.,
and R. F. & P. Railroad

March 2, 1989

Case Nos. LL-137 and LL-2769

By JUDGE T. J. MARKOW

This matter is before the court for decision on the Applications for Correction of Erroneous Assessments filed by the County of Arlington and the City of Alexandria. At issue is the accuracy with which the Department of Taxation assessed real property in those jurisdictions which is used for operations by the Richmond, Fredericksburg and Potomac Railroad. The land in question is commonly referred to as the Potomac Yard, and the assessments under attack are those for the years 1984, 1985, 1986, and 1987.

In Virginia, public service corporations' operating real property is valued for taxation by a central state agency; here the Department of Taxation. Localities then apply their tax rates to determine the amount of tax to be paid. Nonoperating real property owned by public service corporations is now assessed directly by the locality

in which the land lies.[1] Operating real property is that property which is necessary for conducting the corporation's business. Nonoperating property is all other realty owned by the entity. In Virginia, all assessments of real estate must be at fair market value (FMV). (Constitution of Virginia, Art. X, § 2.) At issue is whether the fair market value of the property was determined by the Department.

For some eighty years prior to 1984, the central state agency assessing public service corporation property was the State Corporation Commission. For this entire period, it assessed railroad real property by the "across the fence" (ATF), or "inventory and summation" method, which attributes to the railroad real property the value of other land in the locality having similar characteristics of size, shape and location, assuming that the land was vacant. With regard to the operating property of railroads, the Supreme Court of Virginia has upheld the validity of this method on numerous occasions; *e.g., R. F. & P. v. Corporation Commission*, 219 Va. 301, 247 S.E.2d 408 (1978). *N. & W. Ry. Co. v. Commonwealth*, 211 Va. 692, 179 S.E.2d 623 (1971).

Beginning in 1983, the responsibility for making assessments of the operating real property of public service corporations was shifted by the General Assembly from the S.C.C. to the Department of Taxation. In 1984, the Department employed a new method of assessment of the operating real property of railroads which is referred to as the "unit" method. The unit method is based upon the theory that railroad real property is a part of an indivisible whole, that it cannot be separated and valued, and that its fair market value is determined by first placing a value on the entire railroad by capitalizing income and then deducting for items such as materials and supplies, rolling stock, operating improvements and track. What is left is called "other apportioned value"

---

[1] While the Department was charged with assessing nonoperating property in 1984, the valuation of R. F. & P.'s nonoperating property is not at issue here. At trial, Arlington indicated that it desired to contest the Department's assessment of nonoperating property for 1984, but the court ruled this issue is not raised in the pleadings. Arlington has amended its application and has indicated that this matter may be taken up later.

and includes land, utility lines and personalty. This value is then allocated to the localities on a track-mile basis. Plaintiffs correctly argue that this method makes no attempt to determine the FMV of a particular parcel of realty; although, as to operating railroad property, the court fails to understand how the property can be logically parcelized so as to be able to place a value on discrete parcels which comprise the whole.

Beginning in 1984, as the result of the use of the unit method of appraisal, the railroad operating real property values for Arlington and Alexandria dropped dramatically, as shown here:

*Alexandria:*

| 1983 | $47,606,700 |
| 1984 | $ 5,540,359 |
| 1985 | $12,555,463 |
| 1986 | $13,100,218 |
| 1987 | $14,745,619 |

*Arlington:*

| 1983 | $33,214,000 |
| 1984 | $ 1,341,793 |
| 1985 | $ 3,043,861 |
| 1986 | $ 3,175,928 |
| 1987 | $ 3,574,828 |

For the periods in question, there were 83.2634 acres of operating lands in Arlington and from 336.6009 acres in 1984 to 341.5900 acres in 1985, and 335.5638 in 1987 in Alexandria.

The land in question (The Potomac Yard) is an irregularly shaped corridor beginning on the southwest at the Alexandria-Fairfax county line lying to the north of and adjacent to the Capital Beltway, then proceeding east and north through Alexandria, first along the Beltway; then northerly parallel to the Potomac River until it crosses into Arlington at Four Mile Run where it proceeds to "Long Bridge" at the Potomac River just north of National Airport.

The Potomac Yard is a major interchange and classification terminal for the United States railway transportation system on the east coast. It handles some 760,000 cars annually. Six railroads, including RF&P, operate the Potomac Yard under an "Operating Agreement," which dates back to the 1920's. The Operating Agreement obligates the six to pay RF&P fees based on tonnage. All agree that the rate is far below what a market rate would be today. Under the unit method, this reduced income results in lessened value of the land of the RF&P; however, the primary value of the Potomac Yard to the RF&P is to capture freight business which it then transports to other points to the south of Alexandria. The RF&P president testified that if there were no Potomac Yard, "there would be no RF&P."

The problem here is the land is situated within one of the most densely developed and fastest growing areas of the Commonwealth, if not the United States. Arlington's Director of Assessments, using the ATF method, stated that the fair market value of the land in Arlington would be as follows:[2]

| | |
|---|---|
| 1984 | $60,587,400 |
| 1985 | $70,359,200 |
| 1986 | $57,529,400 |
| 1987 | $64,378,000 |

Alexandria's Director of Real Estate Assessments testified the fair market values of the land in Alexandria to be:

| | |
|---|---|
| 1984 | $113,943,100 |
| 1985 | $142,877,200 |
| 1986 | $187,118,800 |
| 1987 | $205,540,200 |

[2] By citing these figures, the court does not accept them as accurate appraisals of fair market value, as based on the evidence it has serious questions regarding the validity of these appraisals and would not accept them as FMV appraisals if the ATF method were to be required. They are cited solely as illustrations of how far apart the two different appraisal methods are in attempting to measure fair market value of real estate.

At issue is whether the unit method of appraisal is reasonably calculated to measure the fair market value of the operating real property of the Potomac Yard.

As previously stated, the Supreme Court of Virginia has on several occasions upheld the validity of the ATF method of assessment. This should make a decision here simple and the outcome obvious in favor of the ATF method; however, as in each of the cases heard by the Supreme Court, the cases came to the court with a strong presumption in favor of the accuracy of the tax assessment. *N. & W. Ry. Co. v. Commonwealth*, 211 Va. 692, 695 (1971). As in those and in other tax assessment cases, the strong presumption of correctness attaches and stands unless the applicant proves that the assessment is manifestly in error or totally disregards controlling evidence. *Arlington County Board v. Ginsberg*, 228 Va. 633 (1985). Should the courts readily upset assessments, they and not the legislatively established authority would become the assessors, a role for which courts are inherently unsuited.

The first issue then is whether the Department applied incorrect legal principles. If it did, then the court must attempt to rectify this error. If correct principles were applied, the court must weigh the applicant's evidence to determine if the Department erred in applying the principles.

The controlling legal principle is whether the fair market value of the operating real property of the Potomac Yard was measured as required by Art. X, § 2, of the Virginia Constitution. "Fair market value" is that value which a buyer would pay and a seller would accept for a property, neither being under any compulsion to buy or to sell the property. If the unit method was designed to make this measurement, and if it was properly applied, then the assessments must stand; otherwise, they must be re-evaluated. Whether the unit method measures fair market value of the real property in question is a factual, not a legal, question. The expert witnesses disagreed whether this was a proper means of measuring the fair market value of the real property of the RF&P. All agree that a unit method may measure the value of the assets of a railroad, including its real property, but the Applicant's contention is that it measures more than just the

operating real property and that it cannot measure the value of a specific parcel of real property. It is without question that the unit method does not measure the value of specific parcels of real property. It attempts to measure all of the real property of the company. Applicants argue that the method does not, therefore, pass constitutional muster. The court finds that there is credible evidence to find, and it does find, that the unit method may be used to measure fair market value of real property of a railroad, even though it cannot measure the value of specific parcels.

David Jordan, the Department of Taxation employee who conducted the valuations, based his use of the unit method on the theory that the railroad was a single indivisible operating entity that it cannot be property valued by artificially breaking the system into parcels of land, comparing the parcels to other parcels in the locality and placing a similar value on these parcels. Therefore, the more logical method of valuation was the use of the unit method which he adopted. There was evidence to support, and the court finds, that the unit method does measure the fair market value of realty and that the method was applied correctly here.

Unlike a chain of fast food restaurants, gas stations, department stores, etc., any one of which can be divided off from the others without affecting the operations of those remaining, each acre of railroad operating real property is a part of an integrated whole. No part of strictly defined operating property can be taken away without affecting the railroad's operations. For example, this railroad runs from Richmond to Arlington through Ashland. The RF&P could not sell one acre in Ashland to an owner who might decide to place his house and swimming pool on that acre. The railroad would be required to cease its service, as there would be a gap and it could no longer run a train between the points of service. It would no longer have any effective operating property. it is no infirmity to the unit method to say that the track could be rerouted, as the new route would then become a part of the integrated unit; nor is it an infirmity to say that this assumes that the property will always be used as railroad real property when the facts show that this is not the case; nor that the property may be concurrently

used for other services, such as underground electrical or communications systems or for buildings atop the Potomac Yard (i.e., "air rights"). These are problems in the classification of operating versus nonoperating property, rather than a problem with the application of the unit method of valuation. Applicants have not attacked the classifications between operating and nonoperating property. Consequently, this is not an issue before the court.

The major legal complaint against the unit method is that it is not designed to measure the fair market value of specific parcels of real property. When an assessor is to value a property, he must begin with a land or site analysis which begins with the identification of the parcel to be evaluated. See *The Appraisal of Real Estate*, 9th ed., pp. 187-188. See also pp. 61-64. Whether the assessor appraises one acre or 1,000,000 acres constituting Blackacre, he starts with a single parcel of contiguous land sharing common boundaries. Few, if any, parcels are comparable to a railroad, however, in that its parcel is irregularly shaped, it extends for miles and through several jurisdictions. Its nature is not consistent with the common understanding of the word "parcel." Nevertheless, it shares with other "parcels" the attributes of common ownership and contiguity of boundary lines.

The difficulty of dealing with railroad property as a "parcel" was evidenced by the methods of appraisal by the assessor witnesses for each of the applicants. Before attempting to appraise the Potomac Yard property, each appraiser had to arbitrarily subdivide the whole into parcels. This parcelization was along lines drawn by a federal agency for totally different and unidentified purposes. These parcels were used by the State Corporation Commission when it valued the property by the ATF method. The parcelization is artificial and arbitrary. No evidence was presented to support the parcelization based upon any factor such as differences in size, shape, usage, zoning, etc. In fact, there is no explanation whatsoever for the parcelization.

Conceptually, the court cannot say that the Department's valuation of the property as part of a unit is constitutionally infirm. While the Supreme Court of Virginia has determined that the ATF method is a valid method of appraising railroad operating real property, it has not

held that any other method used by the responsible authority which has a valid, factual basis is not permissible. The court finds that based on the evidence, such a basis exists here, and the evidence of the applicants does not overcome the presumption of validity. The Department's use of the unit method is not manifest error; it is based upon legitimate supportable theoretical principles of land valuation. The Constitution does not require valuation of specific small parcels based upon some arbitrary and artificial breakdown. The Potomac Yard is a part of a parcel of land which includes that land between the Potomac Yard and the north side of the James River in Richmond. To break the land into artificial parcels as applicants suggest is to ignore the reality of ownership and use of this property and to treat the railroad differently from other landowners whose land is assessed by parcelization having some rational basis.

The unit method assumes that the value of all assets, including real property, are included in the value of the entire entity; i.e., what one would pay for the entire railroad company entity includes the value of its real estate. Beginning with generally accepted principles, supported by the testimony of competent witnesses in this case, the Department determined fair market value of the RF&P. It then took from that value those items of property which could not have been real property which left a value which included the value of real estate and maybe something more.

Applicants complain that the unit method did not adequately capture value of "air rights;" i.e., the space above tracks which can support buildings in high density communities, underground electrical and communications rights, etc. These were not captured in the Department's analysis, but this is not operating property, which is all the unit method used here attempted to measure. These are indeed property and probably taxable; however, these are uses of property separate and apart from, though not inconsistent with, the operation of the railroads. This is nonoperating property.

From all the evidence, the court finds that the method employed by the Department was reasonably designed to measure the fair market value of operating real property of the RF&P in Arlington and Alexandria, and there was

no evidence that it was improperly applied. The court finds no manifest error in the assessments for any of the years in question, and accordingly, the applications for correction will be denied.