## Richmond

BOARD OF SUPERVISORS OF FAIRFAX COUNTY, ET AL.

V.

DONATELLI & KLEIN, INC., ET AL.

Record No. 820114.

January 18, 1985.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Thomas, JJ., and Harrison, Retired Justice.

A. Robert Cherin, Senior Assistant County Attorney (David T. Stitt, County Attorney, on briefs), for appellants.

*Haynie S. Trotter (Thomas F. Farrell, II; Boothe, Prichard & Dudley,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

The question presented in this appeal is whether the trial court erred in ordering that the real estate tax assessment effective January 1, 1980, of certain property be reduced to the amount of the purchase price paid for the property as of December 31, 1979.

Donatelli & Klein, Inc., and others, trading as Reston Investment Properties Associates,[1] filed an application in the trial court against the Board of Supervisors and Samuel A. Patteson, Jr., Supervisor of Assessments for Fairfax County (collectively, the County), for relief from erroneous assessments under the provisions of Code § 58-1145, now § 58.1-3984 (Repl. Vol. 1984). Donatelli & Klein, Inc., and others, trading as Cedar Ridge Properties Associates,[2] filed a similar application for relief from erroneous assessment. The cases were consolidated for trial and the applicants, for convenience, will be referred to herein as the Taxpayers, although they constitute separate legal entities.

The Taxpayers alleged that they purchased 13 commercial sites in Reston for a total of $32,565,000 and other property in Reston known as Cedar Ridge Apartments for $2,519,149. On January 1, 1980, Fairfax County assessed the commercial sites at $40,798,885 and the Cedar Ridge Apartments at $3,380,180. The Taxpayers sought to have the assessments reduced to the sale prices as being the actual fair market value.

After conducting an evidentiary hearing, the trial court made certain findings of fact. The court found that the sales were "arms-length" transactions "reflecting the will of a seller who desires, but is not obliged to sell, and a purchaser who desires, but is under no necessity to purchase." The court found that the sales followed extensive exposure of the properties to potential purchas-

[1] Donatelli & Klein, Inc., Rodger W. Klein and Louis T. Donatelli, General Partners t/a Donatelli & Klein Associates-Reston, a Virginia Limited Partnership, and Harold Winkler, James C. Wilkes, Jr., and Charles S. Yates, Trustees under the Family Trust under the Last Will and Testament of Mark Winkler, Deceased, all t/a Reston Investment Properties Associates, a Virginia Limited Partnership.

[2] The same parties listed in footnote 1 as those t/a Reston Investment Properties Associates comprised the parties t/a Cedar Ridge Properties Associates, a Virginia Limited Partnership.

ers, both domestic and foreign, but that the transaction was not a sale in bulk, because the sale of each individual property was negotiated separately to its ultimate purchase price. The court further found that in using economic income and expense figures, the County failed to consider other relevant available data such as actual income and expenses, the location and condition of the properties, and the unique status of the Cedar Ridge Apartments (a low-cost housing development subject to United States government control as to income).

The court ruled that the evidence of the recent sale of the properties, while not conclusive, was to be accorded "substantial weight on the issue of fair market value," and that the fair market value of the properties in each instance was the sale price paid by the Taxpayers. The court further ruled that the County had erred in designating various areas as "excess land" (open, developable land) subject to taxation, as this designation was based upon speculative future use. Finding that there was no "excess land," the court ordered the County to correct the assessments, refund to the Taxpayers with interest excess taxes erroneously assessed, and refrain from imposing any tax on "excess land." On appeal, the County contends that the court erred in ordering the assessments reduced to the purchase prices. The County does not challenge the trial court's ruling in respect to "excess land."

Prior to their sale in 1979, the properties were owned by Gulf Oil Corporation or one or more of its subsidiaries (collectively, Gulf). In an effort to divest itself of all its real estate assets, Gulf hired Coldwell Banker and Company and A. E. LePage, United States and Canadian real estate brokers, respectively, as exclusive marketing agents for the Gulf properties in Reston. These firms began a marketing effort that spanned 18 months and exposed the properties to 300 potential buyers in the United States and abroad. Gulf imposed no time or price limitation on the sale, requiring only that the properties be sold together. After offering the properties for sale unsuccessfully for a number of months, Gulf reduced its asking price to $40,500,000 and finally accepted Donatelli & Klein's bid of $39,100,000. This price was later adjusted to $38,300,000 because of deferred maintenance problems at some of the sites. The prices for the properties whose assessments are now in issue were $32,565,000 and $2,519,149, respectively.

Representatives of Gulf, Donatelli & Klein, and Coldwell Banker testified the sale was an "arms-length" transaction. Experts testifying for both the Taxpayers and the County agreed that the most appropriate appraisal method for these income-producing properties was the capitalization-of-income approach.

The Taxpayers offered expert testimony of three appraisers, all of whom considered actual income and expenses in evaluating the property. Robert T. Gates appraised the Reston Investment Properties at approximately $30.5 million and the Cedar Ridge property at approximately $2.5 million, considering the financing arrangements and outstanding leases but not other sales of property. John Bostic testified that his valuation was of the fee ownership interest of each individual property. While he used an income approach to valuation, he was of opinion that the fair market value was the sale price. N. McKenzie Downs, who relied on actual leases, income stream, and expenses, testified that he also considered areas in which the income stream could be improved and considered "comparables" in the Reston community. His appraisals were so close to the actual sale prices that in each case he adopted the sale price as his appraisal of the property's fair market value. While he considered contract leases on the properties, he testified that his appraisals valued each property free and clear of those leases.

Witnesses for the County testified that its income method of assessment utilized "market" or "economic" rents and "expense ratios" rather than actual income and expense figures in order to achieve uniformity. Frederick C. Wyse, the County's appraiser, detailed an economic model based on current sales and market research developed and used by the County. Market figures were based in part on advertised rental rates and on a county survey returned by 350 to 450 property owners. Comparables used in the model covered the entire county, not just Reston. Wyse admitted that the County knew the actual rents and expenses on the properties but instead relied on competitive market data. The County's expert, instructed by the County to use the economic rent theory in evaluating the properties, gave little weight to the actual sales, relying more heavily on sales of what he considered to be similar properties. He conceded, however, that he normally utilizes actual rents and expenses rather than market estimates in his appraisal work. The County's witnesses stated they did not consider the actual sales data because the properties were sold as a package with

special financing and subject to existing leases. These factors, they indicated, would make the purchase prices suspect as indicators of fair market value.

On rebuttal for the Taxpayers, Gates reiterated that the total sale price was not discounted because the properties were sold as a package. He noted that there was a "tremendous" difference between the operating expenses assumed by Wyse and the actual expenses experienced by Gulf.

The Taxpayers presented evidence that in 1974 the Cedar Ridge Apartments produced a net loss of $187,362, had accumulated debt of $1,029,620, and experienced negative cash flow of $497,246. A Federal Housing Authority regulatory agreement regarding Cedar Ridge imposed a rent and profit ceiling. The County's evidence revealed the County considered the FHA agreement to be a 20-year "leasehold" interest. Taxpayers' experts appraised Cedar Ridge at no more than the outstanding mortgage amount, while the County included the value of the "leasehold" interest in its assessment of the fee.

The County first contends that the trial court failed to give the assessment the benefit of the presumption of correctness. As the County notes, the burden is on the Taxpayers to show that the property is assessed at more than its fair market value or that the assessment is not uniform in its application. Code § 58-1145, now § 58.1-3984 (Repl. Vol. 1984). A clear presumption favors the validity of the assessment and can be rebutted only upon a showing of manifest error or total disregard of controlling evidence. *City of Richmond* v. *Gordon,* 224 Va. 103, 110, 294 S.E.2d 846, 850 (1982); *Viscose Corp.* v. *City of Roanoke,* 205 Va. 192, 194-95, 135 S.E.2d 795, 797-98 (1964). Where the trial court finds such error to exist it may properly find the presumption rebutted and fix the fair market value in accordance with the evidence. Code § 58-1148, now § 58.1-3987 (Repl. Vol. 1984); *see Harrisonburg City* v. *Taubman,* 212 Va. 28, 30, 181 S.E.2d 654, 656 (1971). In the present case, the trial court stated in its letter opinion that the evidence "conclusively shows that the assessed values . . . constitutes [sic] a manifest error reflecting a disregard of evidence which should be controlling." It is apparent, therefore, that the court was applying the correct legal principle. Moreover, the case comes to us with the presumption that the trial court's ruling based upon its findings of fact is correct. The presumption is rebuttable of course if the ruling is plainly wrong or without

evidence to support it. *See Taubman,* 212 Va. at 30, 181 S.E.2d at 656.

The County next argues that the court erred in ruling that the sale price of each individual property was the fair market value. The trial court, however, correctly stated the applicable rule that the sale price of property is not conclusive evidence but is to be given substantial weight in determining fair market value. *Viscose Corp.,* 205 Va. at 196, 135 S.E.2d at 798. The court also recognized the settled principle that fair market value is the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing. *Viscose Corp.,* 205 Va. at 194, 135 S.E.2d at 797; *Smith* v. *City of Covington,* 205 Va. 104, 109, 135 S.E.2d 220, 223 (1964). The trial court found that the sales were bona fide "arms-length" sales, and the finding is amply supported by the evidence. Although the court did not rely exclusively on the sale prices but reviewed the other evidence, it concluded that the sale prices in fact amounted to the fair market values of the properties.

*Viscose Corp.,* upon which the County relies, is distinguishable. In that case, we affirmed the trial court's ruling that the taxpayer had failed to overcome the presumption of validity that attached to the assessment. We noted that the taxpayer had offered no witnesses with opinions as to the fair market value of the property and no evidence that the assessment exceeded the fair market value. 205 Va. at 195-96, 135 S.E.2d at 798. Instead, the taxpayer's case was based entirely on the sale price as conclusive evidence of value, a theory which we of course rejected. 205 Va. at 196, 135 S.E.2d at 798. There was no evidence of the circumstances surrounding the sale, the ownership of the corporations which bought the property, or the reasons for the purchase. Therefore, the trial court properly ruled that the taxpayer had failed to meet its burden of showing that the assessments exceeded fair market value. 205 Va. at 196-97, 135 S.E.2d at 798-99.

In the present case, however, the Taxpayers presented expert testimony that the assessments exceeded fair market value and that the sale price was the fair market value of each property. Moreover, the Taxpayers adduced evidence as to the circumstances of the protracted negotiations and ultimate sale, the situations of both buyer and seller, and the condition of the properties.

In *Taubman,* we affirmed the ruling of the trial court reducing the assessment of a store building in Harrisonburg to its recent

sale price. After offering the property for sale unsuccessfully over a period of 11 months, the owner reduced the asking price and sold the store for $135,000. The sale was an "arms-length" transaction. The City of Harrisonburg appraised the fair market value of the property at $358,140. The taxpayer presented two witnesses, one of whom was president of the corporate purchaser, who testified that the fair market value was the sale price. 212 Va. at 29, 181 S.E.2d at 655. The City presented evidence of two recent sales of commercial property in Harrisonburg at a substantially higher price per square foot. After considering all the evidence, the trial court determined that the sale price was the fair market value. Adhering to the view expressed in *Viscose Corp.* that the sale price was not conclusive evidence of fair market value, we nevertheless held that the evidence was sufficient to support the finding of the trial court. 212 Va. at 30, 181 S.E.2d at 656.

The County argues, however, that the trial court erred in giving sale price a preference over the standard of uniformity of assessment. The County relies on cases which state that where it is impossible to achieve both true market value and uniformity, the preferred standard is uniformity. *See Fairfax Co. v. Leasco,* 221 Va. 158, 166, 267 S.E.2d 608, 613 (1980). The concepts of uniformity and fair market value, however, must be considered together. *Id.,* 267 S.E.2d at 613. The Taxpayers in the present case concede that under the methodology developed by the County there is uniformity of application in appraising property for assessment. But the preference for uniformity must stop short of assessment at greater than fair market value. In *Leasco,* unlike the present case, the taxpayer did not claim that the property was assessed at greater than fair market value. 221 Va. at 167, 267 S.E.2d at 613. The challenge was made to uniformity alone. Where other properties are also assessed at 100% of their fair market value, uniformity of assessment as that subject was addressed in cases prior to *Leasco* is not disrupted. Hence, there is no question here of uniformity of assessment.

The County argues that the trial court, in violation of principles enunciated in *Fairfax County v. Nassif,* 223 Va. 400, 290 S.E.2d 822 (1982), erroneously mandated use of actual contract income in appraisals by the capitalization-of-income method. We disagree. We approved the use of economic rent in the capitalization-of-income method of appraisals in *Nassif.* Indeed, we

expressed a preference for the use of economic rent to determine fair market value as a general rule. *Id.* at 405, 290 S.E.2d at 825. Nevertheless, we held that contract rent is relevant evidence of economic rent and cannot be disregarded by the appraisers. *Id.,* 290 S.E.2d at 825. In the present case, however, the Taxpayers' evidence was that market rents were considered, and that contract income was compared with that of other properties in the area. Downs testified that he adjusted the actual income figures when it was apparent to him that the income stream could be improved. To the contrary, the County's appraiser, Wyse, acknowledged that the County knew of Gulf's actual income and expenses in operating the properties but disregarded these figures, relying on the economic market model developed by the County.

*City of Richmond* v. *Gordon,* 224 Va. 103, 294 S.E.2d 846 (1982), upon which the County relies, is distinguishable. In *Gordon,* we upheld the assessment although the assessor did not consider actual operating figures, including income, expenses, and vacancy rates. The taxpayer, however, had refused to provide that relevant information. *Id.* at 111, 294 S.E.2d at 851. In the present case, there is no evidence of any refusal by the Taxpayers to cooperate with the assessors by withholding actual income and expense information. The record shows that such information was available but the County determined that its method of arriving at fair market value by considering only economic rents and expenses was to be used exclusively.

The economic model used by the County is based on income and expenses of commercial properties throughout the entire county area. The model does not allow for adjustment in values where the subject property is situated in an area in which it cannot generate the level of income produced by identical property in a more commercially suitable location. Thus, in the name of uniformity, the County's model can produce assessment values that are greater than actual fair market values because the properties' geographical locations and other individual characteristics are not considered. Rather than relying on "comparables" from the entire county, however, Taxpayers' experts considered Reston "comparables," which more accurately reflected true market rentals for Taxpayers' properties than the theoretical figures employed by the County. It is apparent that the trial court found the Taxpayers' "comparables" to be more acceptable than the County's.

The County asserts that the use of actual income and expense figures creates an unconstitutional tax exemption for the properties to the extent that less than the entire estate is taxed. Where there is a lease producing actual income that is below the market, the County says, the leasehold would be exempt from taxation under the appraisal method approved by the trial court. It is true, as we have held, that the real estate interest to be taxed is the fee simple interest, not the reversion after expiration of a leasehold interest. *Nassif,* 223 Va. at 403-04, 290 S.E.2d at 824; *RF&P* v. *Corporation Commission,* 219 Va. 301, 319, 247 S.E.2d 408, 418-19 (1978); *Railroad Company* v. *Commonwealth,* 203 Va. 294, 301, 124 S.E.2d 206, 211 (1962).

In *RF&P,* we considered the impact on fair market value of an indenture between the railroad and the United States government; in *Railroad Company,* the effect of long-term contracts with other railroad companies was in issue. The indenture and long-term contracts restricted the use of the properties and thus produced limited returns. The taxpayer in each case contended the assessor should have deducted from the assessed values an amount equal to the loss in use value caused by these restrictions. In each case, we ruled that no such deduction was required in arriving at the value of the fee simple interest. *RF&P,* 219 Va. at 319, 247 S.E.2d at 419; *Railroad Company,* 203 Va. at 301, 124 S.E.2d at 211. In *Nassif,* the taxpayer made the similar argument that outstanding long-term government leases at below-market rents should be the measure for gross income in evaluating the property by the capitalization-of-income method. Just as we allowed no deduction for the value of outstanding interests in the railroad cases, we refused in *Nassif* to allow existing below-market leases to be an absolute measure of income. 223 Va. at 404, 290 S.E.2d at 824. But we did not rule that the leases should be disregarded altogether. We held instead that contract rents must be considered in establishing economic rents by which the fair market value is determined. Although the interest being valued is the fee, consideration of the actual income from existing contracts is mandated. *Id.* at 405, 290 S.E.2d at 825. In none of these cases was there evidence of a recent sale of the subject property.

The record in the present case shows that the Taxpayers' witnesses, Downs and Bostic, appraised the fee simple interest. Furthermore, they considered both market rents in the area and actual rents of the property in reaching their valuations. This

technique complies with the *Nassif* mandate. However, the economic rent approach employed by the County, disregarding actual leases, was based on a theoretical return obtainable under optimum conditions which may never exist.

The County on brief attaches great significance to its evidence, introduced as an exhibit, showing that in every sale of properties which it considered to be comparable, the sale price exceeded the assessment, whereas the assessment exceeded the sale price for each of the subject properties. While this disparity may tend to show that the County's assessment methodology is generally fair, it does not explain why the evidence of a freely negotiated sale should not be entitled to substantial weight in this case. The trial court did not err in finding the sale prices to be the fair market values where expert appraisers reached the same or similar values in appraising the properties in fee.

We hold that the findings of the trial court were supported by the evidence. Accordingly, we will affirm the judgment.

*Affirmed.*

COMPTON, J., dissenting.

(No dissenting opinion).