# CIRCUIT COURT OF FAIRFAX COUNTY

Saul Holdings, L.P.

. v.

Fairfax County
Board of Supervisors

Case Nos. (Law) 128837 and 155515

BY JUDGE DENNIS J. SMITH

### July 31, 1997

Petitioners filed two cases against the County of Fairfax for erroneous tax assessments of the subject property, known as the Seven Corners Shopping Center ("shopping center" or "property") for the tax years 1993 and 1996. This Court ordered the two cases consolidated on October 18, 1996, and a trial was held on January 13, 1997.

On January 1, 1993, the shopping center was owned by Westminster Investing Corporation ("Westminster"). On August 16, 1993, Westminster deeded the property to Saul Holdings Limited Partnership ("Saul"). A third party, Saul Holdings, Inc., is named as Westminster's Co-Petitioner in Law No. 128837. Saul Holdings, L.P., is the sole Petitioner in Law No. 155515. Westminster, Saul Holdings, L.P., and Saul Holdings, Inc., are collectively referred to herein as "Petitioners."

The subject property consists of two separate parcels. One parcel is approximately 31.5 acres located east of the intersections of Route 7 and Route 50, and the second is a non-contiguous parcel of approximately 1.6 acres across Route 50. As of January 1, 1993, the shopping center consisted of

four buildings, including a main retail mall building and three smaller retail buildings. Between January 1, 1993, and January 1, 1996, the shopping center underwent a renovation consisting of an interior renovation and expansion of the main retail mall, construction of two freestanding restaurants, and a 16,000 square foot addition to one of the three small retail buildings. A special exception plat, approved by the Board of Supervisors on February 27, 1995, reflects proposed development which did not occur. The unrealized development consisted of two more freestanding retail buildings, a freestanding hotel, and the addition of a third level to the existing two-story retail mall.

Petitioners took exception to the County's assessments for tax years 1993 and 1996 which begin on January 1st of each year. For tax year 1993, Petitioners appealed the assessment to the County Board of Equalization, which reduced the 1993 assessed value of $43,531,605.00 to $39,000,000.00. Petitioners' expert valued the property at $32,400,000.00 as of January 1, 1993. For tax year 1996, the County assessed the property at $55,909,304.00, and Petitioners contend that the proper value is $50,000,000.00. Petitioners initially filed an appeal with the Board of Equalization for the 1996 assessment but chose to withdraw the appeal before the Board acted.

The Code of Virginia provides for application to this Court for relief by any taxpayer aggrieved by any assessment. Va. Code § 58.1-3201. The Petitioners must first establish that the assessment of the County is manifestly erroneous or totally disregarded controlling evidence. *City of Richmond v. Gordon*, 224 Va. 103 (1982). The burden to do so falls upon the Petitioners as the assessment of the County is cloaked in a presumption of correctness. *Id.* If the Court is persuaded that the assessment is manifestly erroneous or the county totally disregarded controlling evidence, then the Court establishes the fair market value of the property. Va. Code § 58.1-3987.

The first question which must be addressed is whether the burden is on the Petitioners to show error in the Board of Equalization determination or in the original County assessment. There are no reported cases on this issue. Procedurally this case is properly in the Circuit Court after a review of the assessment by the Board of Equalization. Section 58.1-3350 of the Code provides that:

> Any person aggrieved by any assessment under this chapter may apply for relief to the board of assessors, or if none, to the board of equalization created under Article 14 (§ 58.1-3370 et seq.) of this chapter or may directly apply for relief to the appropriate circuit court

of the county or city in those localities where application to the aforenamed board is not a prerequisite to the jurisdiction of the court.

As there is no requirement in Fairfax County that the taxpayer submit the matter to the Board of Equalization prior to Circuit Court review, the taxpayer had the option of appealing the assessment directly to the Circuit Court or appealing the assessment to the Board of Equalization. The taxpayer opted for a review of the 1993 assessment by the Board of Equalization. Therefore, the appeal is made pursuant to § 58.1-3382, which provides that an appeal may be taken from the Board of Equalization determination "to the circuit court of the county or city, for the correction and revision of such order, in the same manner and within the same time as is provided by law for the correction of erroneous assessments of real estate by any person who is aggrieved thereby." Va. Code § 58.1-3382.

The taxpayer argues that the appeal must be decided as if it is an appeal from the original assessment as the Board of Equalization does not maintain records which would permit review. As a practical matter, the taxpayer may well be correct that in this case the Board of Equalization records would not permit effective review. However, as a legal matter, the argument must fail. Section 58.1-3384 states that "[t]he board shall keep minutes of its meetings and enter therein all orders made and transmit promptly copies of such orders as relate to the increase or decrease of assessments to the taxpayer and commissioner of the revenue." The burden is and must be upon the aggrieved party to ensure that the Board complies with this provision. The burden falls on any litigant to see to it that a record is made for purposes of any future appeal. Accordingly, this Court finds that the appeal is from the Board of Equalization decision and not the original assessment.

### The 1993 Assessment

At the conclusion of Petitioners' case in chief, the County moved to strike the Petitioners' appeal from the 1993 Board of Equalization assessment on the grounds that the Petitioners had failed to carry their burden by establishing that the assessment was manifestly erroneous or that the County had disregarded controlling evidence. In this case, the County appraised the property at over $43,000,000.00, and the Board of Equalization reduced the assessment to $39,000,000.00. Mr. Robert Ruggles testified on behalf of the Petitioners and opined that as of January 1, 1993, the property had a fair market value of $32,400,000.00. Petitioners assert that this disparity of $6,600,000.00 is sufficient to carry their preliminary burden and rebut the

presumption of correctness. On a Motion to Strike made at the conclusion of plaintiff's case, the Court must view all evidence in a light most favorable to the petitioner. *Rizzo v. Schiller*, 248 Va. 155, 157 (1994). As the testimony of Mr. Ruggles was not inherently incredible, the Court must of necessity accept as true that the stabilized vacancy rate for this commercial property should be 15%; that the economic rent for the property would yield net operating income ("NOI") of $3,790,380.00; and that the appropriate capitalization rate ("cap rate") to use in the direct capitalization of income method of computing fair market value is 11 1/2%. In contrast, the County used a vacancy rate of 10%; $4,293,522.00 as the NOI; and 9.863% as the appropriate capitalization rate. If Mr. Ruggles' testimony is accepted as true, then this disparity would have been manifestly erroneous. Accordingly, the County's Motion to Strike was denied. The denial of this Motion does not mean, however, that the County's presumption of correctness is lost. That only occurs when, after the evidence of both parties has been considered and weighed neutrally, a determination is made that the Petitioners have established by a preponderance of the evidence that the County assessment was manifestly erroneous or disregarded controlling evidence.

The County renewed its Motion to Strike at the conclusion of all of the evidence, and at this point the Court considers all of the evidence presented by both parties. Even at this stage, however, on a Motion to Strike, the Petitioners must be given "the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom." *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 281 (1989). The Motion to Strike is then only granted if no reasonable person could render a verdict in the petitioner's favor. As reasonable persons could differ as to factual conclusions to be drawn from the evidence presented in this case, the renewed Motion to Strike is denied.

Considering all of the evidence in this case relating to the 1993 Assessment, however, the Court concludes that the Petitioners have failed to establish that the fair market value determined by the Board of Equalization (or for that matter the County's original assessment) is manifestly erroneous or that controlling evidence has been totally disregarded. The areas of disagreement between Mr. Ruggles, the Petitioners' appraiser, and Mr. Lewis, the County's assessor, center on the vacancy and collection rates, the NOI, and the appropriate capitalization rate. As the disagreement regarding the NOI results primarily from the disagreement over the vacancy rate, the Petitioners essentially rely upon the argument that the County improperly disregarded the actual vacancy rate in determining its vacancy and collection loss rate and chose an improper capitalization rate.

It has long been held that a mere disagreement between appraisers is not sufficient to warrant a finding that the assessment is manifestly in error. *City of Richmond v. Gordon*, 224 Va. 103 (1982); *Norfolk v. Snyder*, 161 Va. 288 (1933). Furthermore, the Virginia Supreme Court has stated that "[a]scertainment of property values are matters of pure opinion and the courts must, within reasonable bounds, permit the exercise of that opinion, lest they be converted into boards of assessment thereby arrogating to themselves the function of the duly constituted tax authorities." *Richmond Fredericksburg & Potomac R.R. v. State Corporation Comm'n*, 219 Va. 301, 313 (1978).

With respect to the disregard of controlling evidence regarding the vacancy rate, Mr. Lewis testified that he walked through the property just after Christmas, 1992, and found the vacancy rate to be around 9%. While he admitted that he did not walk the storage area, he properly pointed out that the rent received by virtue of the storage area was negligible in comparison to the rent from the retail areas. Furthermore, even assuming the 15% stabilized vacancy rate urged by the Petitioners, if the County's asserted economic rents were accepted by the Board of Equalization as correct and the County's cap rate is applied,[1] the indicated fair market value of the property would be $38,861,686.00.

The County did not totally disregard controlling evidence in deriving the capitalization rate or in formulating the appropriate economic rents for the property. Accordingly, the Court finds that the determination by the Board of Equalization that the fair market value of the subject property for 1993 was $39,000,000.00 was not manifestly erroneous.

### The 1996 Assessment

The County assessment for the subject property for January 1, 1996, was $55,909,304.00. This assessment was also appealed to the Board of Equalization, but that appeal was withdrawn before it could be acted upon by the Board. The errors asserted with regard to the 1996 value are that the County disregarded controlling evidence by using a vacancy rate of 8% and a cap rate of 8.8% and that the County's assessment valuation failed to consider development costs necessary to generate income. The Court finds that the County did not disregard controlling evidence in using 8.8% as the cap rate, nor was use of that rate manifestly erroneous.

As for the County's determination of the appropriate vacancy rate, the Court does find that the County failed to adequately consider the actual

---

[1] The County's capitalization rate was unopposed at the Board of Equalization hearing.

vacancy rate of the mall at the time of valuation. Mr. David Williams testified in a conclusory fashion that he was fully aware of the vacancy rate. However, his answers to specific questions regarding the vacancy rate revealed that he did not have any specific knowledge regarding the actual rate. While the actual vacancy rate is not conclusive, like actual rents, it *must* be considered when a valuation is done using the income method. *Nassif v. Board of Supv'rs of Fairfax*, 231 Va. 472 (1986).

Additionally, as set forth more fully below, the County also erred in failing to consider the development costs necessary to attain and maintain the income stream which is capitalized to arrive at fair market value in the income method. Accordingly, the Court finds the County's valuation to be manifestly erroneous.

Some proposed developments of property are too remote or speculative to form the basis of a valuation. The value is to reflect the fair market value of the property, and it is a "settled principle that fair market value is the price the property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing." *Board of Supv'rs of Fairfax v. Donatelli & Klein, Inc.*, 228 Va. 620, 628 (1985). Remote or speculative uses are therefore irrelevant as they might motivate a particular buyer but are not likely to affect market value. *See Fruit Growers Express v. City of Alexandria*, 216 Va. 602 (1976). The Court has no doubt that to include any value for a hotel on the Seven Corners site would be contrary to the principle illustrated by *Fruit Growers*. Although hotel development was approved, no steps had been taken by Petitioners to make the hotel more than a speculative venture. The use of the property for a hotel could not be established with sufficient certainty to allow for an estimation of costs of construction and ultimate income.

Such is not the case for the renovation of the existing shopping center. The highest and best use of this property is as a retail center, but more specifically, as a strip center or a power center. The conversion of this center from its form as a regional shopping mall to a power center was being undertaken as of January 1, 1996. There were concrete development and rental plans. The cost of development must be included in any calculation of value which is based on an income stream to be derived from the property as renovated.

In *Arlington Bd. v. Ginsberg*, 228 Va. 633 (1985), the Virginia Supreme Court held that property should be valued for the use to which the property is best adapted but that "the assessment must also reflect the expenditures and improvements necessary to allow the property to achieve its maximum potential." *Id.* at 642. The renovation/development in this case was necessary for the property to achieve its maximum potential, and the associated costs

were known with sufficient certainty to take them out of the realm of speculation. Therefore, development costs must be considered in determining the fair market value of the property. The Court also notes that this is entirely consistent with the definition of fair market value. A potential buyer who is purchasing the property to use in a manner for which the property is not yet adapted would consider the costs of adaptation in determining the amount he or she is willing to pay.

Finally, with regard to loss of revenue due to vacancy from renovation, the Court recognizes that "lease up" time is normally taken into account in determining a vacancy rate, but the assumption is made that the property is capable of being leased and that the vacancy is for the period necessary to re-lease the property. In this case, the extensive renovation made leasing impossible for an extended period of time, and the consideration of an additional discount for lost rents during this time is appropriate. The Court finds that the testimony of Mr. Donald Morris was credible and accurately established the fair market value of the property as of January 1, 1996, to be $50,000,000.00.

### December 10, 1997

The Petitioner's Motion for Reconsideration filed herein states that the Court's determination that the appeal was from the Board of Equalization ("BOE") assessment is surplusage and asks that the Court's determination be stricken. The issue before the court on appeal was whether an assessment was manifestly erroneous; therefore, the question of which assessment is being reviewed is potentially critical to the Court. In this case, the Court determined that neither the original assessment nor the BOE assessment was manifestly erroneous or disregarded controlling evidence, but the record should be clear that ultimately the Court was reviewing the BOE assessment.

With respect to the request that the Court strike the reference to § 58.1-3384, the Court notes that this portion of the letter opinion was included as a response to Petitioner's argument, and the necessity for making this statement in the opinion is emphasized by the petitioner's repetition of the statement that the taxpayer has no control over the record keeping of the BOE. It is correct that the taxpayer has no direct control, but the existence of a statutory direction to the BOE to maintain "minutes of its meetings and enter therein all orders made" allows for indirect control. Section 58.1-3384 is mandatory, and if the BOE refuses to disclose the basis for its assessment, then the BOE can be compelled to carry out its duties in this regard.

For these reasons, the Petitioner's Motion for Reconsideration is denied.