# CIRCUIT COURT OF THE CITY OF RICHMOND

Rittenhouse Square, L.C., et al.

v.

City of Richmond et al.

May 20, 1999

Case No. LC-3179-1

BY JUDGE MELVIN R. HUGHES, JR.

This case is before the court on Petitioners, Rittenhouse Square, L.C., and Rittenhouse Square Associates, L.C. (Rittenhouse), Petition to Correct Erroneous Assessment of Local Taxes brought against the Director of Finance, the City Assessor, and the City of Richmond, respondents (the City), pursuant to § 58.1-3984 of the Code of Virginia. The matter came on for trial without a jury on February 26 and March 4, 1999. Following the trial, the parties submitted briefs and gave closing argument discussing the testimony and exhibits, after which the court took the case under advisement.

Rittenhouse owned Hilltop Apartments South (Hilltop South) which are located on East Richmond Road in the City of Richmond during the subject tax years, 1996 and 1997. The property consists of eight buildings which contain a total of 160 apartments. The apartment buildings are located adjacent to a closed city landfill on the east and Oakwood Cemetery on the north. The property is in a low income area and has been entirely vacant since approximately 1994. There are several wells on the property. These were installed by the City to deal with the methane gas from the closed landfill. The buildings are uninhabitable and the evidence showed that the property will need extensive repairs and improvements before it can be occupied by tenants.

The City assessed the property at a value of $810,000 for the years of 1996 and 1997. Rittenhouse claims that the assessments for those years grossly exceed the fair market value of the property and asks the court to correct it.

The court's review of the assessment is governed by several well settled principles of law. "The taxpayer has the burden to show either that its property is assessed at more than its fair market value or the assessment is not uniform in its application." *Board of Supervisors v. Donatelli & Klein,* 228 Va. 620, 627 (1985). "Fair market value is the price that the property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing" *Id.* at 628.

"A clear presumption favors the validity of the assessment and that presumption can be rebutted only upon a showing of manifest error or total disregard of controlling evidence." *Donatelli,* 228 Va. at 627; *Arlington County Board v. Ginsburg,* 228 Va. 633, 640 (1985). "A taxpayer can demonstrate manifest error by showing a substantial disparity between fair market value and the assessed value of the subject property." *Board of Supervisors v. Telecommunications Indus., Inc.,* 246 Va. 472, 475 (1993).

Rittenhouse argues that the fair market value of Hilltop South is $380,000 not $810,000 as assessed by the City. Rittenhouse asserts that the value of Hilltop South was determined by the City by applying a minimum value of $5,000 to each of the 160 apartments, with an additional $10,000 for one unit being used as a rental office. Rittenhouse argues that the $5,000 does not reflect the fair market value of the property, but is instead an arbitrary minimum value that the City assigns to all uninhabitable apartments.

In the post-trial briefs, Rittenhouse points out that the City only presented one witness on its behalf and that the reports associated with the valuation of the property as disclosed at trial could not be found. As stated previously, the burden of proof in a tax assessment case lies with the taxpayer. There is a clear presumption in favor of the validity of the assessment. *Telecommunications,* 246 Va. at 475. "The effect of the presumption is that even if the assessor is unable to come forward with evidence to prove the correctness of the assessment, this does not impeach it since the taxpayer has the burden of proving the assessment erroneous." *R. Cross, Inc. v. City of Newport News,* 217 Va. 202, 207 (1976). The court, therefore, will focus on Rittenhouse's evidence that $5,000 per apartment is a substantial deviation from the true fair market value of the property.

Rittenhouse relies on two factors in arguing that the fair market value is only $380,000. The first is the sale of the property in December of 1997 at auction for $380,000. The second is an appraisal of the property done by its

appraiser, Allen Dorin, which values the property at $345,000. The court will address each of these in turn.

The Virginia Supreme Court has said "Our definition of the market value of property focuses on those elements which influence a buyer and a seller in arriving at a sale price. It implies that they have negotiated at arms's length and agreed upon a price for the property, and we have held that this is the preferred means of determining its fair market value." *Lake Monticello Service Co. v. Board of Supervisors of Fluvanna County*, 237 Va. 434, 439 (1989). "If property is sold at a forced sale, we do not consider it to be competent evidence of its fair market value because the seller and buyer have not had the opportunity to negotiate and agree on a price satisfactory to each." *Id.* at 439. "In many sales at auction, there is present an element of legal compulsion which negates the idea of a free and voluntary transaction and which rebuts the probability that fair market value has been paid and received." *Appalachian Power Co. v. Anderson*, 212 Va. 705, 713 (1972).

The auction occurred in December 1997; therefore, the City could not have considered this in its own assessment for 1996. Although the court can use the auction sale price as evidence in determining fair market value, for the reasons mentioned, the price is not conclusive. The evidence showed that the auction was absolute which required the seller to sell the property to the highest bidder regardless of the price. The court finds that such an arrangement is not indicative of fair market value. The fact that the property was sold at auction after two years of unsuccessful attempts to sell on the market indicates an urgency to get rid of the property. This will usually lead to a lower price. Furthermore, Peter Lain who bought the property at the auction, testified that he thought the property was worth more than the $345,000, his successful bid for the property. Therefore, the court does not find the City's assessment was erroneous simply because it was more than the auction price.

The petitioner's second argument against the assessment is based on the appraisal done by Allen Dorin which put the value at $345,000. Dorin used two main approaches to determine the value of the property, the income approach and the direct sales comparison approach. In applying both of these methods, Dorin based his valuations on the estimated value of the property after rehabilitation. He determined what the rental value of the properties would be after the property had been completely rehabilitated by using the rental incomes of comparable rehabilitated properties in the area. He determined that the market rent for the area was approximately $425.00 a month per unit. All of his estimates were therefore based on this presumed income. Also important to his calculations under both of these methods, was

his determination that the cost of rehabilitation for each unit would be $22,000.00. Therefore, after determining the value of the property after rehabilitation, he subtracted $22,000.00 per unit from the value for the cost of improving the units.

Under the income approach, he determined that, after expenses, taxes, reserve, and vacancies, the value of each unit was $23,125.00. After subtracting the estimated $22,000.00 cost of rehabilitation, each unit was valued at $1,125 per unit. Under this analysis, he put the value of the property at $180,000.00.

Under the direct sales approach, each unit was valued at $24,225.00. As noted, this value was based on the estimated market rent for the property once rehabilitation had been effected. After subtracting the cost of rehabilitation, the value of each unit was placed at $2,225.00. When this value is multiplied by the 160 units, the value of the property was placed at $356,000.

Although the Supreme Court has recognized the direct sales approach and the income approach as two acceptable methods of valuing property, the Court has also found that valuation of property based on speculative income is not reliable.

> Valuation based upon an estimate of the potential income which might be realized from utilization by the owner in a manner of which it is capable but of which he has not yet availed himself has generally been rejected on the ground that such income is too uncertain and conjectural to be acceptable.

*Fruit Growers Express v. City of Alexandria,* 216 Va. 602, 608 (1976). The speculative estimated income of the property on which both valuations are based is too indeterminate to be reliable. Furthermore, both estimates are based on the cost of rehabilitation being $22,000.00 per unit. While this estimate is based on the opinions of a contractor and a developer, there is no evidence that these estimates are reasonable. There is no indication that the estimates were based on the two ever visiting the property in question. In fact, one estimate was for a cost of $25,000 per unit. In that instance the argument would be that the buildings actually have a negative value. Further, the estimated rehabilitation cost stated in the auction brochure was for $8,000.00 per unit. Although this was purely an estimate, the court notes that the difference is over $14,000.00 per unit. In addition, a developer who testified for the City, Earl Ferguson, testified that he has rehabilitated five other similarly situated apartment complexes and estimated that the cost for rehabilitation at approximately $18,000.00 per unit. As was argued by the

City, when this rehabilitation cost is applied to Dorin's estimated values of the property, each unit is valued at $6,225.00 and $5,125.00 per unit under the direct sales and income approach respectively.

The court finds that Dorin's estimates, based as they are on the property being completely rehabilitated, are too uncertain to overcome the presumption of validity attached to the assessment. Further, the estimated value for rehabilitation is unsupported by evidence and is, again, unreliable.

The city appraiser testified that he used the sales comparison approach to fix the fair market value of the property. The appraiser based his value on what buyers were willing to pay for uninhabitable property in the area. He found that a property known as Stony Brook was the most comparable property which he said was actually in worse condition than Hilltop South. The direct sales comparison approach showed that the property in its uninhabitable condition sold for $5,264.00 per unit. This was lower than any other property that was compared. The City then valued Hilltop South even lower, valuing each unit at $5,000.00.

As previously mentioned: "A clear presumption favors the validity of the assessment and that presumption can be rebutted only upon a showing of manifest error or total disregard of controlling evidence." *Donatelli*, 228 Va. at 62; *Arlington County Board v. Ginsburg*, 228 Va. 633, 640 (1985). Courts shall be reluctant, within reasonable bounds, to change assessor's judgments because courts are not duly constituted tax authorities." *Board of Supervisors v. Leasco Realty, Inc.*, 221 Va. 158, 165 (1980).

After considering all of the evidence the court concludes that the petitioners have failed to establish that the city committed manifest error or disregarded controlling evidence in valuing the property. The petitioners have not shown that there is a substantial disparity between the fair market value and the subject property. The assessments are therefore upheld as fixed by the City at $810,000.00 for 1996 and 1997.