# CIRCUIT COURT OF THE CITY OF RICHMOND

Jackson Warehouse, L.P.

v.

City of Richmond

July 13, 2010

Case No. CL06-7919

BY JUDGE MELVIN R. HUGHES, JR.

In a Petition to Correct Erroneous Assessment authorized by Va. Code § 58.1-3984, an owner of real property in Richmond challenges the validity of the City of Richmond's tax assessment for years 2005, 2006, and 2007.

The property is a renovated warehouse converted to a residential apartment complex. Of the three generally recognized approaches for appraisals, the City, after rejecting the income approach, and using a sales comparison approach and an income analysis, assessed the value of the property at $2,000,000.00 for each of the years in question. The City reduced the assessment for tax year 2006 to $1,800,000.00. The issues revolve around the sales comparison approach which was used and the income or income capitalization method which the landowner urges should have been used. Both sides agree the cost approach, a third generally accepted method, is inappropriate for the property. As seen in the cases, the issue is whether the City "committed manifest error or disregarded controlling evidence in making the assessment." *Keswick Club, L.P. v. County of Albemarle*, 273, Va. 128, 136-137 (2007).

To begin, a taxing authority, as is the case with the City here, is aided by a presumption of validity with respect to its real estate assessment. See Va. Code § 58.1-2984(A). The rules of assessment has a constitutional underpinning as well, as the Virginia Constitution requires

that real estate be assessed at fair market value. Va. Const., Art X, § 2, and Va. Code § 58.1-3201. Consideration must be given to all approaches, and the method selected can be applied only after proper rejection of other approaches. *Id.* An "automatic" approach without a sufficient attempt to garner the necessary information to apply a different approach results in a loss of the presumption of validity. *Id.* at 134.

As noted, the subject property is an apartment building. The owner converted it from a former warehouse in 1997. The property is located in an area of the City known as Shockoe Bottom. The area is known to be flood prone, a fact the landowner thinks is significant for valuation. While the property leased forty-four units following the conversion, subsequent flooding made for hazardous conditions in four units and consequently the building currently leases 40 units. The individual unit apartments are all small with small appliances. Another aspect the landowner urges is salient in the income capitalization approach it prefers is that rents on the subject property include all utilities, some of which are commonly included in other apartments, like water, sewer, and trash, and others which are not, namely, here, electric, cable tv, and high speed internet. The landowner complains that the City did not properly account for these property features in assessing the property.

The landowner's two appraisal witnesses went through the methodology of their approaches. They are critical of the City's approach, especially its use of a gross income multiplier. According to the testimony of the experts, the gross income multiplier consists of the ratio of the sales price of a property to its annual gross income at the time of sale. Their chief complaint of the multiplier, as is their main criticism throughout, is that the City's approach did not properly account for the subject property's unique rent-utility structure. They contend that the City had the data available with respect to the property's utility-rent scheme and the buildings expenses, but failed to properly allow for these items in its appraisal.

The City contends that, though it admittedly used the sales approach in its valuations, it did utilize the income approach through the use of a gross income multiplier. The multiplier served as a check on the sales approach. The City contends that the incorporation of the GMI into its assessment satisfies its obligation to consider and properly reject all other approaches. Thus its assessments retain the presumption of validity. The Court agrees.

The evidence of the city's use of the sales approach, with the use of the gross income multiplier, according to the city assessor's testimony, as

a "check," provides the detail on how the assessment was performed. That testimony delineated and relied on the methodology utilized, its application, the factual information available, the weight assigned and how other information was discarded to arrive at the assessment. *Board of Supervisors of Fairfax County v. Donatelli & Klein*, 228 Va. 620, 325 S.E.2d 342 (1985). In fact, the City's testimony related that the methodology used for valuation for all the years in question was an income and a sales approach.

The City took sales that had occurred to set up a mass appraisal model. From the sales of apartment buildings, a unit price was derived to give a gross income multiplier. The assessor used "well over a hundred sales" in constructing the model for the years in question. An examination of these background sales were subjected to a ratio analysis between the sales price and the assessment and each apartment complex categorized according to the number of units. The assessor explained of this attempt to arrive at a "uniform" assessment of categorized apartment buildings with a recognition of certain amenities pertaining to each unit for the type and square footage in the same areas. The assessor determined an 8% appreciation annual rate for sales city wide after 2000 and adjusted them "up to the value range from 2004 and 2005." The area of analysis was said to be Zone 1, an area where the subject property is located. The assessor conducted an exterior inspection of many of the background sales properties. In fact, the assessor testified that he used an income approach for the year 2005 and determined that for units that only furnished water, sewer, and trash generated gross income multipliers of 8 and 9 while the gross income multiplier for the subject property was 7 to 8 due to the added utility cost of cable, electric, and the internet. The assessor said that, based on the income expense, the utility cost of the subject was between $60.00 to $65.00 per unit or conservatively, $75.00 per unit. He also testified that he found the subject's management fees and administrative costs exceeded costs that were used for apartment buildings of less than fifty units city wide. Using the gross income multiplier, the assessor determined a value range of subject property of $2,268,000.00 to $2,592,000.00. Finally, the assessor stated he used the gross rents for each year in question for his evaluation. He recommended a valuation of $2,000,000.00 but the Board of Review reduced the value for one of the years by $200,000.00.

When reviewing a tax assessment, "courts must be hesitant, within reasonable bounds, to set aside the judgment of assessors; otherwise, the courts will become boards of assessment thereby arrogating to themselves

the function of the duly constituted tax authorities." *Keswick Club, L.P. v. County of Albemarle*, 273 Va. 128, 138 (2007) (citing *City of Richmond v. Gordon*, 224 Va. 103, 110 (1982)). In order to show a violation of the "considers and properly rejects" standard by a taxing authority's usage of a single approach, a landowner must demonstrate "the taxing authority failed to make an effort to acquire the data necessary to perform appraisals based on the other approaches." *Keswick*, at 137 (quoting *Board of Supervisors of Fairfax County v. HCA Health Services, Inc.*, 260 Va. 317, 330 (2000)).

The Court holds that the City assessor did consider data concerning the unique rent structure necessary to perform appraisals. While plaintiff contends the income approach, and not the sales approach, is the proper one to yield the fair market value, there is no right to a preferred method of valuation. "The requirement of equality and uniformity is satisfied by such regulation as will secure an equal rate and a just valuation, without reference to the method of valuation." *R. Cross, Inc. v. City of Newport News*, 217 Va. 202, 206 (1976).

With the presumption of validity preserved, plaintiff must demonstrate that the City "committed manifest error or disregarded controlling evidence in making the assessment." *Keswick*, at 136-37. While plaintiff presented expert appraisers to counter the City's assessment and its experts may very well have produced a more accurate value, "the value of property is a matter of opinion and there must necessarily be left a wide room for the exercise of opinion; otherwise, courts will be converted into assessing boards." *City of Norfolk v. Snyder*, 161 Va. 288, 292 (1933). Plaintiff's experts demonstrate the inexact science of property appraisal but do not demonstrate any manifest error in the City's assessment. Accordingly, the Court will deny plaintiff's Petition and rule that the City assessments of the subject property are not legally erroneous.