# CIRCUIT COURT OF LOUDOUN COUNTY

Sterling Park
Shopping Center, L.P.

v.

Loudoun County
Board of Supervisors

August 12, 1999

Case No. (Law) 18627

BY JUDGE JAMES H. CHAMBLIN

In this action pursuant to Va. Code § 58.1-3984, the Petitioner, Sterling Park Shopping Center, L.P., seeks the correction of allegedly erroneous real estate tax assessments of the Sterling Park Shopping Center for the years 1994, 1995, 1996, and 1997. Evidence was presented on June 23 and 24, 1999. Counsel argued on the last day of the hearing. Afterwards, the Petitioner filed its Proposed Findings of Fact and Conclusions, and the Board of Supervisors of Loudoun County filed its Post-Trial Brief.

After consideration of the evidence and the oral and written argument of counsel, the Petition is denied. The Petitioner is barred from introducing into evidence the income and expense information for the subject property, in order to challenge the assessments for 1994 and 1995, because it failed to furnish a statement of income and expense for the subject property requested by the County for the years 1994 and 1995 as required by Va. Code § 58.1-3294. For all four tax years in question, the Petitioner has failed to rebut the

presumption of the validity of the assessments. It has not shown manifest error or total disregard of controlling evidence by the County in its assessments. The assessments are upheld.

*1994 and 1995 Assessments: Failure of the Petitioner to Furnish Pursuant to the County's Requests Statements of Income and Expenses*

By letter dated May 12, 1993, and addressed to the Petitioner at the address shown on the County's tax records, the County requested a statement of income and expenses for the subject income-producing property for the year 1992 to be used by the County for the 1994 assessment. Similarly, a letter dated August 8, 1994, requesting such information for the year 1993 to be used for the 1995 assessment was sent to the Petitioner at the same address. The Petitioner did not respond to either letter.

Virginia Code § 58.1-3294 provides as follows:

Any duly authorized real estate assessor, board of assessors, or department of real estate assessments may require that the owners of income-producing real estate in the county or city subject to local taxation, except property producing income solely from the rental of no more that four dwelling units, furnish to such assessor, board, or department on or before a time specified, which time may be extended for not less than ninety days, upon application of the owner of such property statements of the income and expenses attributable over a specified period of time to each such parcel of real estate. Each such statement shall be certified as to its accuracy by an owner of the real estate for which the statement is furnished, or a duly authorized agent thereof. Any statement required by this section shall be kept confidential in accordance with the provisions of § 58.1-3. The failure of the owner of income-producing property, except property producing income solely from the rental of no more than four dwelling units, to furnish a statement of income and expenses as required by this section shall bar such owner or his representative from introducing into evidence, or using in any other manner, any of the required but not furnished income and expense information in any judicial action brought under § 58.1-3984.

The two aforesaid letters were sent in the due course of the County's business by John Nelson, Senior Commercial Appraiser, who did the four assessments in question. The Petitioner presented no evidence that it had

furnished the requested statements for the tax years 1994 and 1995 to the County.

The shopping center has been the subject of prior proceedings pursuant to Va. Code § 58.1-3984 for tax years at least as far back as 1986. The assessment for 1993 was settled. In the prior litigation the County had been supplied with the income and expense information for the years 1986 through 1992. In addition, the Petitioner supplied such information for 1992 when it requested a review of the 1993 assessment by the County, and, later by the Board of Equalization. Mr. Nelson admitted that he had access to such information in making the assessments for 1994 through 1997.

The petitioner argues that it should not be prejudiced because it failed to furnish the income and expense statement because the County already had the information when it made the assessments for 1994 and 1995. I do not agree with the Petitioner. It is not a question of whether the County had the information. It is a question of whether or not the Petitioner complied with Va. Code § 58.1-3894. The Petitioner did not comply. Therefore, it cannot introduce into evidence, or use in any other manner, any of the required, but not furnished, income and expense information in this action concerning the assessments for the tax years 1994 and 1995.

Because the actual income (contract rent) is an essential component of the appraisals for the tax years in question performed by the Petitioner's expert, Donald R. Morris, MAI, his opinion is *not* admitted into evidence and cannot be used to challenge the County's assessments for the years 1994 and 1995.

The Petitioner also argues that the County did not consider, or if it did, it gave only token consideration to, contract rents, and that, as a result, the failure to provide the income and expense information is superfluous. I do not agree. As described later, the County did consider the actual or contract rents in making the assessments. Also, even if the County had disregarded contract rent in making the assessments, that does not excuse the Petitioner from furnishing the requested income and expense statements. There is no such exception in Va. Code § 58.1-3294, just as there is no exception if the County has otherwise acquired the requested information.

### 1994 Through 1997 Assessments

Sterling Park Shopping Center is located on a little under fifteen acres on Sterling Boulevard in Sterling Park in eastern Loudoun County. It is a multi-building shopping center with approximately 94,000 square feet of rentable area including four pad site buildings. It consists of two anchor tenants, Safeway and CVS Pharmacy, which lease over 50% of the rentable area.

Additionally, there are twenty-two mall tenants as well as four pad tenants, which are all restaurants such as Hardees (McDonalds), Friendly's, and Taco Bell.

The shopping center was constructed in the early 1960s. Its two anchor tenants have long-term leases executed in 1963. The Safeway lease is at $1.33 per square foot which was a market rent in 1963, but is below market in 1994 through 1997. It has seven five-year options to renew after 1983. It was in its third renewal period in 1994 through 1997.

The Peoples, later CVS, lease is at $3.17 per square foot. It was at market rate when executed in 1963 with an initial twenty-year term and options to renew at five-year intervals through 2018. In 1994 through 1997 it is below market rate rent.

Besides its age and deteriorating condition needing repairs, the shopping center is of an old design where the mall tenants are not visible from the street. Additionally, a considerable amount of other shopping center space came on line in 1994 through 1997 as part of the well-known extensive commercial, as well as residential, expansion in eastern Loudoun County in the 1990s.

The central issue in this case is the effect of the below market rate rents on the assessment. It is clear that under *Board of Supervisors of Fairfax County v. Nassif,* 223 Va. 400 (1982), and *Nassif v. Board of Supervisors of Fairfax County,* 231 Va. 472 (1986), in determining the fair market value of income producing property the preferred method is by capitalization of economic rents. The economic rents determination must be specific to the property being appraised as opposed to some abstract or theoretical property. Additionally, and essential to this case, contract rents must be considered in ascertaining economic rents. Contract rent alone cannot be used to appraise income producing real estate.

Mr. Nelson testified that, in making his assessments, he took the statements of income and expenses from all the shopping centers in the county and developed an economic model. Then he applied adjustments to the model based on the specifics of each property. Even in 1994 and 1995 when he did not have actual income and expense figures from the Petitioner, he made adjustments for the subject property based on its condition, configuration, existing leases (as revealed in the County's records), and competitors. He adjusted the assessment using lower than market rental rates, higher expenses, and vacancy rates than market rates and a high end capitalization rate. All the adjustments tended to lower the value of the subject property. When doing the assessments for 1996 and 1997, Mr. Nelson had the actual income and expense figures, and he considered them in determining the economic rents.

Mr. Nelson complied with the requirements of *Nassif I* and *Nassif II*. He considered contract rent in determining economic rent. The examples he gave of adjustments from his economic model for the subject property clearly show that he clearly applied a low end economic rent in formulating his assessment.

Mr. Morris, the Petitioner's expert appraiser, determined a fee simple value for the subject property by a comparable sales approach, for each year remarkably close (except for 1997, when his value is much greater) to the County's assessment, as follows:

| Year | County Assessment | Morris' Fee Simple Value (using comparable sales approach) |
|------|-------------------|------------------------------------------------------------|
| 1994 | 7,507,300 | 7,880,000 |
| 1995 | 7,751,000 | 8,000,000 |
| 1996 | 7,917,600 | 9,000,000 |
| 1997 | 6,786,000 | 9,000,000 |

However, Mr. Morris went farther and took an income approach to determine the fair market value for each year in question. Based on what he determined to be market rent, expenses, and vacancy rates, he determined the net operating income. He did the same determinations based on actual rent, expenses, and vacancy rates to determine a net operating income. He then took the difference between the higher net operating income based on market rents, and the lower operating net income based on actual rents, and discounted it at 12% through the year 2011. He totaled the differences for each year and subtracted them from the fee simple value he determined by the income capitalization approach (fee simple). As a result, he determined the fair market values to be as follows:

| Year | Value |
|------|-------|
| 1994 | 5,180,000 |
| 1995 | 5,300,000 |
| 1996 | 5,500,000 |
| 1997 | 5,400,000 |

The County's expert, William Harvey, expressed serious concerns about Mr. Morris' approach. Mr. Morris may have tried to justify his approach by citing appraiser standards concerning valuation by discounted case flow

analysis. But I must agree with Mr. Harvey that Mr. Morris did not reach his opinions by using a discounted case flow analysis but determined a fee simple value and then deducted a factor calculated using a discounted case flow analysis. Mr. Morris made a deduction for a partial component, and he tried to deduct one estate (a leased fee) from another (fee simple). Mr. Morris created a hybrid methodology without showing any recognition for it (other than the other experts he talked to who agreed with his approach). Mr. Morris' approach contains too much speculation and conjecture which is not permitted in determining fair market value for real estate tax assessment purposes. *See, e.g. Fruit Growers v. Alexandria,* 216 Va. 602 (1976); *B.O.B Title XXVI, Inc. v. Loudoun County Supervisors,* 39 Va. Cir. 128 (Loudoun County, 1996).

I decline to change the assessment to the values testified to by Rebel Powell, MAI, SRA, another County expert, because her opinions rely too much on cost of repairs as the basis for adjusting market rents on account of contract rents to determine economic rents. She also miscalculated the rent being paid under the Hardees (McDonalds) lease by basing the rent on the total land area rented as opposed to the building area actually generating rent.

Appraising real estate is an art, not an exact science. There will always be differences of opinion. There will always be as many different opinions as there are experts to give them. Courts must permit the exercise of such opinions within reasonable bounds or risk being converted into boards of assessment, thereby abrogating to the courts the function of the duly constituted taxing authorities. *Richmond F. & P. R.R. v. State Corp. Comm'n,* 219 Va. 301 (1978). The evidence shows that the County gave due consideration to contract rent in this case.